FIVE OAKS CORPORATION *v.* GATHMANN ET AL.

[No. 128, October Term, 1947.]

350

*Decided April 22, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON, and MARKELL, JJ.

*Michael Paul Smith* and *Southey F. Miles,* with whom was *W. Albert Menchine* on the brief, for the appellant.

*John Grason Turnbull* and *William D. Macmillan* for the appellees.

MARBURY, C. J., delivered the opinion of the Court.

The appellees, four husbands and their wives, owning and occupying residences in Catonsville, Baltimore County, filed their bill of complaint against the appellant corporation, which, less than a year previously had acquired an existing public swimming pool and restaurant on the Frederick Road, near the property of the appellees. It was alleged that since the appellant began to operate the business, it had caused glaring lights to cast their

beams into the dwelling houses of the appellees, necessitating the drawing down of window blinds, which, in the summer months, interfered with the free passage of air. Also that it had caused the restaurant to remain open 24 hours each day, and had permitted nickelodeons (a kind of mechanical so called musical instrument, operated by the insertion of a coin) to be made available for the use of the patrons, two of them in the open, and one in the restaurant, which in the summer is an open-air building. That the playing of these nickelodeons prevented the appellees from enjoying their homes and their rest. It further alleged that the appellant, on the parking lot, furnishes car service to parked automobiles, particularly on Friday, Saturday and Sunday nights. This continues until the early morning, always up to three A. M. and creates a bedlam of noise, by the blowing of horns, loud conversations and frequent starting of automobiles, all of which prevents the appellees from getting their required rest and sleep. The bill of complaint asks that the appellant be permanently enjoined from maintaining the electric lights, permitting the playing of the nickelodeons, particularly after ten P. M., and from making possible the noises emanating from the parking lot on the premises after ten P. M. and from otherwise conducting its business operation so as to constitute a nuisance. After answer had been filed, testimony was taken at length, the case consuming approximately eight days. At its conclusion, the Chancellor found that the appellees had been materially injured by the operation of the restaurant in the manner in which it was conducted between twelve o'clock mid-night and three A. M., and passed a decree enjoining the appellant. This decree, as will hereinafter be shown, not only generally enjoined the operation of the business in such a manner as to interfere with the reasonable and comfortable enjoyment of their property by the appellees, but set out certain specific prohibitions and regulations for the purpose of remedying the objectionable conditions. From the decree, this appeal is taken.

352

The law has been long settled that an individual may file a bill to restrain the continuance of a public nuisance if it injures or impairs the value of his property. One of the early English cases was *Soltau v. De Held,* 9th Eng. Law & Eq. 104, in which the vice chancellor enjoined the ringing and tolling of bells in a chapel adjoining the dwelling of the complainant. This case and a number of other English and American authorities are cited in the opinion of Judge Krebs, delivered in the Circuit Court for Baltimore City, and reported in full in the case of *Hamilton v. Whitridge,* 11 Md. 128, at pages 130 to 141, 69 Am. Dec. 184. See also *City of Georgetown v. Alexandria Canal Company,* 12 Pet. 91, 9 L. Ed 1012, where the Supreme Court pointed out that any owner of property affected by such a nuisance, so that he suffered a special damage, could maintain an action in a Court of Equity.

This doctrine is not applicable to public nuisances alone. It applies also to any situation where the use of property by one person damages or injures another. In the case of *Scott v. Bay,* 3 Md. 431, (an action of trespass on the case) decided nearly 100 years ago, this Court said "It is a rule of the common law, that a man should so use his own property as not to hurt or injure another, and therefore if one carry on a lawful trade or business in such a manner as to prove a nuisance to his neighbor, he must answer in damages. There are many cases in the books where this doctrine has been applied, and among the number are those where a man erects a smith's forge, swine-sty, lime-kiln, tallow-furnace, machine-shop, quarry or privy, so near the dwelling-house of another as to render it unfit for occupation. *Brady v. Gill,* Lutw. 69, *Aldred's Case,* 9 Coke, 58; *Jones v. Powell,* Hut. 135; *Morly v. Pragnel,* Cro. Car. 510; *Rich v. Basterfield,* 56 Eng. C. L. 786; *Fish v. Dodge,* 4 Denio [N. Y.], 311 [47 Am. Dec. 254]. And, especially, for the general principles applicable to this case, the court would refer the case of *Hay v. Cohoes Company,* 3 Barb., N. Y., 42."

In the case of *Adams v. Michael,* 38 Md. 123, 17 Am. Rep. 516, which was an application for an injunction to prevent the erection of a factory which it was alleged would become a nuisance, the Court refused injunction because the allegations in the bill were not specific. The bill was dismissed without prejudice to a right to bring a better complaint. But Judge Alvey, who delivered the decision in that case, said "There is no question or difficulty in regard to the principle invoked by the complainants in this case. The power to interfere by injunction to restrain a party from so using his own property as to destroy or materially prejudice the rights of his neighbor, and thus to enforce the maxim, *"sic utere tuo ut alienum non laedas,"* is not only a well established jurisdiction of the Court of Chancery, but is one of great utility, and which is constantly exercised. Indeed, without such jurisdiction, parties would, in many cases, suffer the greatest wrongs, for which actions at law would afford them no adequate redress. It is not every inconvenience, however, in the nature of a nuisance to a party's dwelling, especially in a large commercial and manufacturing city, that will call forth the restraining power of a Court of Chancery by injunction. To justify an injunction to restrain an existing or threatened nuisance to a dwelling-house, the injury must be shown to be of such a character as to diminish materially the value of the property as a dwelling, and seriously interfere with the ordinary comfort and enjoyment of it. Unless such a case is presented a Court of Chancery does not interfere. It must appear to be a case of real injury, and where a court of law would award substantial damages. *Walter v. Selfe,* 4 De G. & Sm. 323; *Jackson v. Newcastle,* 33 L. J. Ch. 698; *Soltan v. De Held,* 2 Sim., N. S. 159; *Kerr on Inj.* 350. Where, however, such is shown to be the case, the power of the court is clear, and it will interpose by injunction." In the case of *Bonaparte v. Denmead,* 108 Md. 174, 69 A. 697, 701, an injunction against the conduct of a stable was refused, but in the course of the opinion the Court repeated the statement from *Metropolitan Savings*

*Bank v. Manion,* 87 Md. 68, 81, 39 A. 90, to the effect that a stable, whether used for livery purposes or for private convenience, may sometimes become a very great nuisance and source of discomfort "against which the courts would not fail to grant relief." The same general doctrine was repeated in *Hamilton Corporation v. Julian,* 130 Md. 597, 101 A. 558, 7 A. L. R. 746, in which an injunction was sought against the erection of a bowling alley.

A case, similar in many respects to the one before us is that of *Meadowbrook Swimming Club v. Albert,* 173 Md. 641, 197 A. 146, 148. In that case this court, quoted in toto the opinion delivered by Chief Judge Samuel K. Dennis, in the Circuit Court of Baltimore City,. in which a number of decisions are cited. Judge Dennis concluded his opinion in the following words: "It can scarcely be argued that any habitual noise (whether produced by skilled musicians led by the frank and cultivated leaders who testified as here, or by domestic animals, as in *Singer v. James,* 130 Md. 382, 100 A. 642) which is so loud, continuous, insistent, not inherent to the character of the neighborhood, and unusual therein, that normal men, women, and children, when occupying their own homes, however distant, are so seriously incommoded that they cannot sleep, study, read, converse, or concentrate until it stops, is not an unreasonable, unlawful, invasion of their rights." The latest case which discussed the earlier decisions was that of *Hart v. Wagner,* 184 Md. 40, 40 A. 2d 47. The question before us is well expressed by Judge Alvey in the case of *Dittman v. Repp,* 50 Md. 516, 33 Am. Rep. 325, where he said "In all such cases, the question is, whether the nuisance complained of, will or does produce such a condition of things as, in the judgment of reasonable men, is naturally productive of actual physical discomfort to persons of ordinary sensibilities, and of ordinary tastes and habits, and as, in view of the circumstances of the case, is unreasonable and in derogation of the rights of the complainant."

It is true that there are certain inconveniences and discomforts incident to living in a city or in a thickly settled suburban community. These discomforts must be endured as part of the privilege (or at least of the fulfillment of the desire) of living in close proximity to other people. But these discomforts must not be more than those ordinarily to be expected in the community, and incident to the lawful use of the offending property or business. If they exceed what might be reasonably expected and cause unnecessary damage, or annoyance, then the Court in an appropriate case, will act. See *Dittman v. Repp, supra; Hyatt v. Myers,* 73 N. C. 232, quoted with approval in *Gallagher v. Flury,* 99 Md. 181, 57 A. 672, and *Lohmuller v. Samuel Kirk & Son Co.,* 133 Md. 78, 104 A. 270.

In a case involving the playing of baseball at an amusement grounds on Sunday, the Court of Chancery of New Jersey, after stating that noise is one of the necessary accompaniments of modern civilization, and that men as social beings must subject themselves to whatever annoyances reasonably arise out of necessary and useful operations, went on to say that noises which would not be adjudged nuisances if made in the day-time, would be declared nuisances if made at night, and during the hours which are usually devoted by the inhabitants of the neighborhood to sleep. *Gilbough v. West Side Amusement Company,* 64 N. J. Eq. 27, 53 A. 289. In a case in Florida the Supreme Court of that State enjoined a club located in a residential section of a community from operating public dances from nine-o'clock until two in the morning in a dance pavillion. The court, in that case, differentiated between dances in a building and dances in the open air, and confined the injunction to those continuing after the time that people were usually asleep. *Bartlett v. Moats,* 120 Fla. 61, 161 So. 477.

In the present case the record shows that the Townsend property is across the Frederick Road from the appellant's property. The Calk property adjoins it, and on the other side of the Calk property is the Gathmann

property. These appellees all live in their properties, although the Townsends have an antique shop, the Calks have a tea room and the Gathmanns have a research laboratory. However, there is no question that this community was a quiet suburban residential community, that the appellees lived there comfortably, and were not disturbed by the operation of the appellant's property, until its acquisition by the present owners, and that its present operation is a great change from the manner in which it was previously conducted.

It would prolong this opinion to an unprecedented length to attempt to relate the testimony or to give any sort of synopsis of it. It is sufficient to say that the appellees testified and produced testimony largely substantiating their contentions. The appellant produced a number of witnesses who contradicted this testimony and denied that the operation of the appellant's business was objectionable, at least to them, in any way. There can, however, be no doubt from this testimony that there were glaring lights (since altered, at least to some extent), that there were loud noises in the nature of music which could be heard late at night or in the early morning in the neighborhood, and that, until three o'clock in the morning people were constantly coming and going in the parking place, horns were blowing, voices could be heard, and there were other noises which would interfere with those in the neighborhood who required some quiet for the purpose of sleeping. No liquor is sold on the premises and it seems to be agreed that the appellant tries to operate a well conducted business and permits no rowdyism or disturbance of any kind. It cannot, of course, prevent all noise made by its customers on the outside, and this constitutes one of the objectionable features of the operation to the appellees. It is significant that the record shows that during the year from April 1946 to April 1947, the records of the Baltimore County Police Department, show that the police were called 41 times about conditions there. One of these complaints was serious, but most of them were of disorders, noise, horns blowing

and drunken parties. A great many of the complaints were made by the appellees, who apparently tried their best to get the police to act. A number of the calls, however, were made by employees of the appellant, who apparently had some trouble on their hands they could not handle themselves. It can, we think, fairly be assumed that any operation which practically every week has some condition which is sufficiently disturbing to require a police call, is a potential source of annoyance to its neighbors. When these calls have to do with noises, it becomes fairly obvious that the appellant is operating a disturbing business in the neighborhood. Neighbors do not call the police every time something disturbs them, and people in the business of public entertainment like nothing less than to have police called to their premises. It may be presumed, at least with respect to the calls made by the employees of the appellant, that the conditions at those times were much beyond their control.

There is another feature in the case which is quite compelling from our standpoint. This case was heard at length. Many witnesses testified. Their testimony was conflicting. The Chancellor heard them and saw them. He came to the conclusion that the appellees had proved their case. We can find in the record testimony to that effect. Under such circumstances, with nothing but the cold printed type before us, we should not say that the Chancellor was wrong in his conclusion, unless it very clearly appears that a mistake, either of law or of fact, was made. A mistake of fact does not mean that on reading the testimony we might come to a different conclusion from that reached by the Chancellor who saw and heard the witnesses. It means that the evidence clearly does not support the conclusion of fact reached by the Chancellor. This we are unable to say is the case. We think the facts do substantiate his findings, and that the appellees were entitled to equitable relief.

The decree in this case not only prohibits the defendant from causing or permitting noises and sounds to be transmitted to the property of the plaintiffs to such an

extent that such noises and sound may interefere with the reasonable and comfortable enjoyment of their properties and dwelling houses, but it also sets out four specific methods by which this is to be done.

(a) After mid-night, no music shall be played on the premises.

(b) After mid-night, no curbside and car-side service shall be furnished, but customers shall be served only within the restaurant building.

(c) The restaurant shall be closed not later than 2:00 A. M. and not reopen until 7:00 A. M.

(d) That the electric lights shall be dimmed or focused so as to prevent them from being an annoyance to nearby residents, unless this has already been done.

The appellant notes that in the Meadowbrook case, *supra*, only a general decree was passed, which left the defendant at liberty to devise and apply an efficient plan for the abatement of the prohibited nuisance. That is what the appellant thinks should have been done in the present case. In furtherance of that view, it calls to our attention the case of *Washington Cleaners & Dyers, Inc., v. Albrecht*, 157 Md. 389, 146 A. 233. This was a case in which the operation of a cleaning and dyeing establishment was enjoined. The decree first directed the appellant to arrange and restrict its factory so that no fumes or cleaning fluid detrimental to the health of the neighbors be given off. On a later petition alleging that the defendant had not carried out this decree, the Court became more specific and restrained the defendant from using Varnalene and gasoline in such quantities and manner. The appellant declared that the decree was too vague because the appellant was not told how to rearrange its plant. This was the exact opposite of the complaint of appellant here, but this appellant points to the Court's answer in that case that "it is no part of the function of the Court of Equity to tell the appellant how to run its business." The Court went on to say that it could not conduct an inquiry and formulate plans to enable appellant to conduct its plant in order to conform

to the decree and that what it did was as specific as it could be under the circumstances. However, in the case of *International Pocketbook Workers' Union v. Orlove,* 158 Md. 496, 148 A. 826, 831, which was an injunction in general terms restraining striking employees from unlawful picketing, this Court said that while it had been customary to draft injunctions in similar cases in broad comprehensive terms, they were issued in the first place upon complaint of specific excesses, "and it would seem possible under ordinary conditions to fit the orders to the particular needs, and give the defendants a fairer guide." In the case of *Singer v. James,* 130 Md. 382, 100 A. 642, the Court said that an injunction restraining the appellant from permitting any foul odors or smells from his barnyard, hog pen, etc. was entirely too broad and uncertain, and that the decree should have specifically pointed out the things he was required to do and was restrained from doing in order to abate the nuisance which the Court found to exist.

Each case must be determined upon its own facts, but it seems to us that paragraph (a) which suspends the playing of all music after 12:00 o'clock, goes further than is justified. It may be quite possible for the appellant to have music played inside its building in such a way that it would not reasonably annoy the appellees, and it is not necessary, at this time at least, to absolutely prohibit the playing of all music on all parts of the premises. Paragraph (c) is also objectionable, because if the appellant desires to conduct an all-night restaurant, it should be possible to conduct it in such a way as not to interfere with the neighbors. If it does not so operate its business, in the future, further measures may be taken. The operation of the curbside or carside service is accompanied by the blowing of horns, loud talking in the open air and the constant stopping and starting of automobiles. This is largely done by the patrons, and there seems to be no way to control it, other than to prohibit such service after twelve o'clock. We do not think paragraph (b) is an improper instruction by the

Court to the appellant as to the method of doing its business. On the contrary, we think this is the only method by which the annoyance from this outdoor service can be prevented from harassing and annoying the neighborhood. Nor do we think that paragraph (d) is improper. If the lights have already been fixed, as appears from the evidence, it will do no harm, and if they have not, they should be. The Supreme Court of the United States, in a lengthy and important case, concerning the operation of a copper smelting plant, determined that escaping sulphur produced the harmful results, and passed a decree which provided for the keeping of records and for inspection of the plant, so as to determine just how far the final prohibition should go. *State of Georgia v. Tennessee Copper Co.,* 237 U. S. 474, 35 S. Ct. 631, 59 L. Ed. 1054. That case was retained for further action with a right to either party to apply later for appropriate relief. It was in the nature of an experimental decree, justifiable on the assumption that on the one hand specific relief might be burdensome and unnecessary and on the other hand that any specific prohibition laid down by the Court might not produce the result desired. That case was of such magnitude, involving such an extensive operation, that the facts are in no sense comparable to the facts in the case before us. Nevertheless, it is applicable in this respect, that it shows the advisability of not being too explicit in the prohibition first decreed. In harmony with this point of view, we think that in a nuisance case such as the one before us general decrees should be passed with only such specific prohibitions as appear to provide the only remedies. In other respects, the offending party should be allowed to take such measures as in its opinion will reach the desired result. If these measures are not adequate or sufficient, further application can be made to the court, as in the Washington Cleaners case, *supra,* appropriate action can be taken, and the decree made more specific where it appears to be necessary. And while we do not assume that the decree will not be obeyed, and that the appellant will not do all

in its power to abate the nuisance caused by the noisy operation of its business inside the restaurant after midnight, it is not, we think, out of place to remind it that courts have wide powers in dealing with those who do not obey their decrees. We note this because in modifying the decree we do not wish to be understood as justifying any of the conditions or of placing the appellees in a position where they will have to try this case over again, in case appellant does not remedy the conditions complained of and found to exist.

The decree will be modified by striking out paragraphs (a) and (c), and, as so modified, will be affirmed in all other respects.

*Decree modified and affirmed, with costs to the appellees.*