69 A.3d 512

David S. SCHUMAN

v.

GREENBELT HOMES, INC.

No. 2020, Sept. Term, 2011.

Court of Special Appeals of Maryland.

June 27, 2013.

454 

J.P. Szymkowicz (Szymkowicz & Szymkowicz, LLP, Washington, D.C., Rita Turner, Brandywine, MD), on the brief, for Appellant.

Jason E. Fisher & Michael J. Goecke (Lerch, Early & Brewer, Chartered, on the brief), Bethesda, MD, for Appellee.

Panel: MEREDITH, ZARNOCH, ARRIE W. DAVIS, (Retired, Specially Assigned), JJ.

ZARNOCH, J.

A Mills Brothers hit from the 1930's asks the musical question:

Where do they go,

The smoke rings I blow each night?

Oh, what do they do,

Those circles of blue and white?

This litigation stems in large part from a neighbor's unhappiness with the ultimate location of such secondhand tobacco smoke.

Appellant David S. Schuman sued his cooperative housing association, Greenbelt Homes, Inc. ("GHI"), for breach of the implied covenant of quiet enjoyment and negligence. He also sued his neighbors, Darko and Svetlana Popovic, for breach of contract, nuisance, trespass, and negligence. Schuman's claims arose from his neighbors' smoking that caused secondhand cigarette smoke to enter his patio and home. After a bench trial, before the Honorable Albert W. Northrop, the Circuit Court for Prince George's County ruled against Schuman. For the following reasons, we agree and affirm the decision of the circuit court.

## FACTS AND LEGAL PROCEEDINGS

Greenbelt Homes is a housing cooperative located on Ridge Road in Greenbelt. It is a nonstock, nonprofit corporation organized under the laws of Maryland. Cooperatives are a form of home ownership where the owners are members of the corporation and own a share of ownership in it. Md.Code (1975, 2007 Repl.Vol.), Corporations and Associations Article ("C & A"), § 5–6B–01(f) and (g). Each member has the right to use a particular dwelling unit. *Id.* At least in the case of Greenbelt Homes, the interest of each member is represented by a Mutual Ownership Contract. *See Green v. Greenbelt Homes, Inc.,* 232 Md. 496, 498, 194 A.2d 273 (1963).

The units at GHI are townhouses that share common walls. Since 1995, Schuman has been a resident, member, and shareholder of GHI. His unit immediately adjoins the unit owned by the Popovics, who moved into the cooperative in 1996. Their townhouses are two stories with painted brick exteriors. The back of each townhouse has a door on one side, with a small patio next to it that is covered by an overhang. Next to the patio is a small garden.

Schuman complained to GHI of cigarette smoking by the Popovics the same year they moved in. Schuman was concerned that cigarette smoke was entering his home, mainly in the bathroom. GHI sealed the cracks between the two units to try to mitigate Schuman's exposure to the smoke. Afterward, GHI hired an Industrial Hygienist to test the air in Schuman's unit. At that time, no detectable level of nicotine was found. Schuman said that the problem was resolved, until 2008.

In 2008 spanning into 2009, Schuman renovated his kitchen, dining room, a second-floor laundry closet, and a half-bath. During the renovations, some drywall was removed on the wall shared with the Popovics' unit. When Schuman started smelling cigarette smoke in his unit again, he sent several letters to both the Popovics and GHI. The Popovics purchased a new air filter but Schuman still smelled the smoke. Further

discussions between GHI, Schuman, and the Popovics did not solve the problem.

Since GHI's management could not adequately address Schuman's complaint, the management referred the case to the Member Complaints Panel. On September 28, 2009, Schuman presented his evidence to that body. Eventually, GHI's president sent Schuman a letter explaining GHI's position. The cooperative would seal any additional areas in Schuman's unit, but it would not request that the Popovics stop smoking, because GHI is not a smoke-free community.

On March 10, 2010, Schuman filed a complaint in the circuit court against GHI for breach of the implied covenant of quiet enjoyment and negligence. He sued the Popovics for breach of contract, trespass, nuisance, negligence, and for preliminary and permanent injunctions. He also requested a declaratory judgment that smoking was a nuisance under GHI's membership contract.

The same month, Mrs. Popovic became ill and was diagnosed with a brain tumor. This caused Mrs. Popovic to quit smoking and Mr. Popovic to stop smoking inside his unit. Mr. Popovic continued to smoke outside on the patio in the evening for twenty minutes to an hour and a half. In April 2012, Mrs. Popovic passed away of a cancerous brain tumor.

Addressing Schuman's prayer for declaratory and injunctive relief, the circuit court denied the motion for declaratory relief. However, because Mr. Popovic consented to an injunction against smoking inside the unit, the court granted the preliminary injunction with respect to inside smoking. The court denied the request for a preliminary injunction to halt Mr. Popovic from smoking outside, because Schuman failed to show that he would suffer irreparable harm. The court explained that, based on this evidence, the only direct damage to Schuman was odor. Yet Schuman did not complain of the odor; he complained of health problems. To that end, Schuman did not produce any medical records of an unfavorable health condition or any evidence of a real injury. Schuman's expert's report, according to the court, dealt only with poten-

tial injury because of the Popovics' smoking *inside* their unit, and therefore, would not be relevant to any injury caused by smoking *outside* the unit. Schuman also did not show that the smoking diminished his property value.

Schuman appealed to this Court, which affirmed the trial court's ruling on the preliminary injunction and held that the denial of the declaratory judgment was not yet appealable. *See Schuman v. Greenbelt Homes, Inc.*, No. 1538, September Term, 2010 (Md.Ct.Spec.App. June 8, 2011). This Court concluded that Schuman could not attack the circuit court's ruling to grant the preliminary injunction prohibiting the Popovics from smoking cigarettes inside their unit because he prevailed, albeit on the basis of consent. The Court also rejected all claims stemming from Mrs. Popovic's smoking since the circuit court found that she no longer smoked. Thus, the only basis for Schuman's claims was Mr. Popovic smoking on his patio.

In affirming the denial of the preliminary injunction, we determined that the evidence did not support a finding that smoking was a nuisance *per se* [1] because the evidence of harm from secondhand smoke was only a potential risk of disease. Additionally, we concluded that the circuit court did not abuse its discretion in finding a lack of irreparable injury. Schuman offered no medical testimony that he had suffered any injury. Schuman's neighbor had testified that shutting the window and running a small fan stopped the smell of smoke. Thus, this Court determined that Schuman was not being harmed when shutting his window and turning on a fan stopped the smell. Additionally, Schuman's expert had opined that the presence of nicotine in Schuman's unit could only be remedied by eliminating smoking inside the Popovics' unit. In light of this evidence, we said that the circuit court logically could have reasoned that Schuman's problem was resolved when the

---

**1.** A nuisance *per se* is "an act, occupation, or structure which is a nuisance at all times and under any circumstances regardless of location or surroundings." *Adams v. Comm'rs of Trappe*, 204 Md. 165, 170, 102 A.2d 830 (1954).

Popovics stopped smoking inside their unit. Finally, this Court said that if Mr. Popovic only smoked four to six cigarettes a night on his patio, the circuit court would have been within its discretion to find that this was not a substantial or unreasonable interference with the use and enjoyment of Schuman's property.

Subsequently, in the circuit court, GHI filed a motion to dismiss and/or for summary judgment on Schuman's claims against GHI. The circuit court granted the motion as to the declaratory judgment but denied the motion on the other counts. After a six-day trial, the circuit court, in November 2011, granted Schuman's request for a permanent injunction but only against Mr. Popovic's indoor smoking and on the basis of his consent. However, the court found against Schuman on all other claims.

The circuit court found deficiencies in Schuman's case, centering on the lack of harm or interference with Schuman's use and enjoyment of his property. At the most basic level, no expert testified that Schuman suffered any significant injury from secondhand smoke. One expert, Dr. Alfred Munzer, testified that there was no specific likelihood that Schuman would develop a disease from secondhand smoke. Schuman testified that the smoke caused him to have headaches, watery eyes, and respiratory infections, but the court explained that Schuman testified that these symptoms occurred because of smoke seeping into his home when both Popovics were smoking inside, not when Mrs. Popovic stopped smoking and Mr. Popovic started smoking outside only.

The court found that the amount of smoke entering Schuman's home when the windows were open was inconclusive. Schuman's expert, James L. Repace, was not clear on how far smoke travels before it dissipates. In fact, he changed his mind between the preliminary injunction hearing and trial and said it was an evolving area. The court also found that Repace had some bias because he was the father of one of Mr. Schuman's friends. Finally, Repace tested the courthouse— where smoking was prohibited—for nicotine in the air and the

reading was similar to the reading he had received in Schuman's home.

The circuit court also determined that if smoke were entering Schuman's home when the windows were open, it was something that could have been easily remedied. Schuman testified he could not shut the windows before smoke entered his home and smoke came in even if the windows were shut. But, there was testimony from two neighbors, Kevin Hammett and Dorothy Ipolito, that the smoke from the Popovics' patio did not penetrate their homes if their windows were shut. The court also said that based on the neighbors' testimony, an exhaust fan could alleviate the smoke that entered Schuman's home. Moreover, even if smoke were entering his home, it was not substantial or unreasonable, because Mr. Popovic smoked only during a short time in the evening.

The court said that a finding for Schuman would essentially be a ban on smoking in most residential homes and that such an action should be left to the Legislature. The court analogized smoking to driving a car:

> [N]ot all nuisances are necessarily actionable....Driving can be dangerous. If you step off the curb, it's dangerous. There are risks involved. Driving isn't banned. It's a danger to people. There are accidents every day. Millions and perhaps billions of dollars in damages, but we don't ban driving, obviously.

> These things are regulated. Smoking has been regulated. The legislature has made that determination as to how to do it.

> Without a more specific and clear expression—and, again, remember that the plaintiff has the burden of proof—of an actual harm, not just from an admittedly offensive odor, I cannot find that there is an actionable nuisance in this case.[2]

---

2. The circuit judge's oral ruling also said: "I am not going to issue a declaratory judgment that all secondhand smoke is bad as a nuisance *per se* or must be banned."

The court embodied its rulings in an order dated November 3, 2011 and filed 12 days later.[3] However, the court issued no declaratory judgment that Mr. Popovic's smoking did not violate GHI's Mutual Ownership Contract.

Schuman timely appealed. Additional facts will be discussed as necessary.

## QUESTIONS PRESENTED

Schuman raises several questions on appeal, which we have reorganized and reworded as: [4]

1. Did the circuit court err in finding against Schuman on his breach of contract claim, nuisance claim, and request for an injunction against Mr. Popovic's smoking?

2. Did the circuit court err in determining that GHI did not breach the implied covenant of quiet enjoyment?

3. Did Schuman prove by a preponderance of the evidence that he was entitled to monetary damages under theories of trespass or negligence?

Answering each question in the negative, we affirm the rulings of the circuit court. However, we remand for entry of a declaratory judgment.[5]

---

**3.** The order concluded that the preliminary injunction count was now moot.

**4.** Schuman asks:
1. Did the circuit court err in failing to enforce Mr. Schuman's rights found in GHI's MOC?
2. Did the circuit court err in failing to recognize and apply the common law of nuisance in denying Mr. Schuman's request for a permanent injunction precluding the Popovics from smoking on their property?
3. Did the circuit court err in denying Mr. Schuman's request for monetary damages based on the migration of secondhand smoke?

**5.** The fact that the side that requested the declaratory judgment did not prevail in the circuit court does not render a written declaration of the parties' rights unnecessary. *Maryland Cas. Co. v. Hanson,* 169 Md.App. 484, 524, 902 A.2d 152 (2006). The circuit judge should declare the rights of the parties even if such a declaration might be contrary to the desires of the plaintiff. *Id.*

## DISCUSSION

### I. Introduction

When Schuman initially filed his complaint, in addition to outside smoking, he complained of smoke migrating from the Popovics' home to his through the common dividing wall. Because the circuit court entered an injunction against Mr. Popovic smoking inside his home, the only smoking still at issue on this appeal is Mr. Popovic's smoking on his porch.

The crux of Schuman's argument is whether Mr. Popovic's smoking amounts to a nuisance. Schuman has couched this argument in different forms. He contends that Mr. Popovic is violating GHI's membership contract, which states that members will respect the comfort and peace of mind of neighbors and not engage in activities that are "a nuisance," annoying, or inconvenient to other members. He also argues that GHI breached the implied covenant of quiet enjoyment in allowing Mr. Popovic, by smoking in his home, to continue to violate the membership contract. He further asserts that the smoking constitutes a common law nuisance and trespass. Finally, he argues that Mr. Popovic was negligent in smoking and GHI was negligent in not stopping him from smoking.

### II. Standard of Review

■ When reviewing a judgment from a trial without a jury, an appellate court reviews the law and the evidence. Md. Rule 8–131. We "must consider the evidence in the light most favorable to the prevailing party," deciding whether the court's determinations "were supported by a preponderance of the evidence" (or the lack of a preponderance). *See El Bey v. Moorish Sci. Temple of Am., Inc.,* 362 Md. 339, 353, 765 A.2d 132 (2001).

### III. Breach of Contract and Nuisance

Schuman argues that Mr. Popovic violated the membership contract by smoking and, relatedly, that his smoking has created a nuisance. Because Schuman's contract claims are based on whether Mr. Popovic's smoking should be considered

a nuisance under GHI's contract terms, we discuss his contract and nuisance claims together.

The "authorized use of premises" clause of the membership contract is the primary focus of Schuman's argument that Mr. Popovic violated that contract. It provides:

> Authorized Use of Premises. Member and each person named on the occupant list filed with GHI, shall use the Premises and the common property and facilities in conformance with the terms of this Contract, the Bylaws, and the Rules. Use of the Premises or any part of the Premises for any purpose contrary to the interests of GHI or its members as determined by GHI or contrary to law is not authorized. *It shall be the duty of Member to respect the comfort and peace of mind of neighbors as well as of all members and tenants of GHI, not to engage in conduct that is objectionable conduct,* and to ensure that all persons occupying or visiting in the Premises so act. *Member agrees not to* do or allow to be done, or keep or allow to be kept upon the Premises, anything that will increase the rate of insurance on the Premises or *do or allow any act or thing that shall or may be a nuisance, annoyance, inconvenience, or damage to GHI or its members or tenants, or to the occupants of adjoining dwellings or of the neighborhood.*

(Emphasis added.) Schuman interprets the contract terms "respect the comfort and peace of mind of neighbors" and "nuisance, annoyance, inconvenience" as covering Mr. Popovic's smoking. He asserts that these contract terms actually provide him with greater rights than he would have if he did not live in the community and merely sued Mr. Popovic under a common law nuisance theory.

██ If this were Schuman's only argument—that Mr. Popovic's smoking violates the membership contract—our review would essentially be over. GHI already interpreted the cooperative contract to permit Mr. Popovic's smoking. A court would not typically need to review that decision because it is protected by the business judgment rule. *See Black v.*

*Fox Hills North Community Assoc., Inc.*, 90 Md.App. 75, 81–83, 599 A.2d 1228 (1992) (finding that the business judgment rule "precludes judicial review of a legitimate business decision of *an organization*, absent fraud or bad faith," and therefore, a homeowner's association's decision to approve the construction of a fence was shielded from judicial review regardless of whether it was permitted under the association's covenant) (emphasis added).[6] Schuman has not alleged GHI acted in bad faith or committed fraud. Dispensing of Schuman's claims that the contract somehow expands the definition of nuisance, we believe his claims against GHI and Mr. Popovic are really grounded, not in the meaning of nuisance in GHI's "authorized use of premises" clause, but in the common law of nuisance. GHI cannot decide whether something is a common law nuisance. *See Sadler v. Dimensions Healthcare Corp.*, 378 Md. 509, 526–32, 836 A.2d 655 (2003) (explaining that the business judgment rule does not protect a corporation, as a private entity, from liability for tortious conduct and breach of contract). As a result, we must do more than decide whether GHI properly interpreted the cooperative's contract; we still have to determine if Mr. Popovic's smoking is a common law nuisance.

On that front, Schuman first contends that Mr. Popovic has created a nuisance simply through engaging in the act of smoking. We disagree. A nuisance is an interference with the enjoyment of one's property when that interference is substantial and unreasonable such that it would be

---

6. This rule set forth in *Black* seems to be an expansion of the statutes protecting *directors* of organizations, but not the *entity*, from liability when engaging in decision making for the business. *See* Md.Code (1974, 2013 Repl.Vol.), Court and Judicial Proceedings Article ("CJP"), § 5–417 ("A person who performs the duties of that person in accordance with the standard provided under § 2–405.1 of the Corporations and Associations Article has no liability by reason of being or having been a director of a corporation."); C & A § 2–405.1(a) ("A director shall perform his duties as a director, including his duties as a member of a committee of the board on which he serves: (1) In good faith; (2) In a manner he reasonably believes to be in the best interests of the corporation; and (3) With the care that an ordinarily prudent person in a like position would use under similar circumstances.")

offensive or inconvenient to the normal person. *Gorman v. Sabo*, 210 Md. 155, 159, 122 A.2d 475 (1956) (Citation omitted). A nuisance *per se* is "an act, occupation, or structure which is a nuisance at all times and under any circumstances regardless of location or surroundings." *Adams*, 204 Md. at 170, 102 A.2d 830.

Schuman argues that any amount of secondhand smoke is harmful and annoying and therefore should constitute a nuisance. We do understand that although the true effects of secondhand smoke are still being assessed, it obviously can be harmful. *See* A Report of the Surgeon General: How Tobacco Smoke Causes Disease: The Biology and Behavioral Basis for Smoking–Attributable Disease (2010); A Report of the Surgeon General: The Health Consequences of Involuntary Exposure to Tobacco Smoke (2006); *see also Fogle v. H & G Restaurant, Inc.*, 337 Md. 441, 459, 654 A.2d 449 (1995) ("There was abundant scientific evidence in the record to justify the [Labor] Commissioner's conclusion that [environmental tobacco smoke] constitutes a 'significant risk' to the health of Maryland employees due to its established connection to a higher incidence of lung cancer and heart disease in those workers exposed to it. . . ."). However, that does not make it a nuisance *per se.* In an earlier iteration of this case, Schuman's appeal of the denial of a preliminary injunction, this Court determined that Schuman had not provided sufficient evidence that smoking was a nuisance *per se.* The Court said:

The evidence adduced at the hearing did not show that secondhand cigarette smoke at any location, in any amount, will cause injury. As the circuit court pointed out, Mr. Repace opined that secondhand smoke from an individual smoking outside ordinarily will dissipate at a distance of about 25 feet. Obviously, that testimony is inconsistent with the notion that secondhand smoke is a nuisance *per se.* Also, Mr. Repace was careful to explain that he was not qualified to opine, and was not opining, about any causal connection between secondhand smoke and diseases. Rather, he was opining only about the potential risk of disease

from secondhand smoke. The evidence at the hearing simply did not support, and certainly did not mandate, a finding that outdoor secondhand smoke is a nuisance *per se*.

Schuman did not present any additional evidence at trial that would change our view. It is undisputed that GHI permits smoking in and outside of the units and always has done so. Thus, when the Popovics and Schuman signed their respective contracts, smoking was permitted. Because GHI's members were allowed to smoke at the time the contracts were signed (and still are), the mere act of smoking in one's unit or on one's patio is unlikely to be substantially and unreasonably offensive to any person at any time.

Additionally, public and workplace smoking is regulated to protect others from secondhand smoke. The Clean Indoor Air Act prohibits smoking in many public places.[7] And Md.Code (1991, 2008 Repl.Vol.), Labor and Employment Article ("L & E"), § 5–608 prohibits smoking in indoor places of employment. However, smoking in private homes is specifically excepted from both of these statutes.[8] These legislative decla-

---

7. Clean Indoor Air Act, Md.Code (1982, 2009 Repl.Vol.), Health–General Article ("H–G"), § 24–504, states:
 Except as provided in § 24–505 of this subtitle, beginning on February 1, 2008, a person may not smoke in:
 (1) An indoor area open to the public;
 (2) An indoor place in which meetings are open to the public in accordance with Title 10, Subtitle 5 of the State Government Article;
 (3) A government-owned or government-operated means of mass transportation including buses, vans, trains, taxicabs, and limousines; or
 (4) An indoor place of employment.

8. H–G § 24–505 provides:
 This subtitle does not apply to:
 (1) Private homes, residences, including residences used as a business or place of employment, unless being used by a person who is licensed or registered under Title 5, Subtitle 5 of the Family Law Article to provide child care, and private vehicles, unless being used for the public transportation of children, or as part of health care or child care transportation;
 (2) A hotel or motel room rented to one or more guests as long as the total percent of hotel or motel rooms being so used does not exceed 25%;

rations, while not binding on this Court's interpretation of the common law of nuisance, do have some bearing on whether smoking in or about the home is an unreasonable action. If this Court were to hold that any amount of secondhand smoke entering from one cooperative housing member's home to another's constituted a nuisance, we would be one step away from banning smoking in all private homes—an action inconsistent with State statutes. The circuit court explained that such a ruling would eventually lead to single family home owners bringing nuisance actions because many of those homes are not much further apart than the cooperative housing homes. We agree; it would be hard to reasonably define the areas where a smoker could smoke without the risk of a lawsuit.

Our decision that tobacco smoke is not a nuisance *per se* is consistent with the holdings in other jurisdictions. In *DeNardo v. Corneloup*, 163 P.3d 956, 958–59 (Alaska 2007), for instance, a tenant in an apartment building sued another tenant in the building and the landlord for "(1) breach of the covenant of quiet enjoyment, (2) breach of the covenant of habitability, (3) negligence, (4) trespass, (5) battery, (6) nuisance, and (7) retaliatory eviction." The neighboring tenant smoked and the tenant who filed the lawsuit claimed he suffered "anxiety, nausea, headaches, dizziness, sleeplessness, and general ill feeling" in addition to "humiliation" and "distress" because of his exposure to secondhand smoke. *Id.* at 958. The trial court granted the defendant's summary judg-

---

(3) A retail tobacco business that is a sole proprietorship, limited liability company, corporation, partnership, or other enterprise, in which:
(i) The primary activity is the retail sale of tobacco products and accessories; and
(ii) The sale of other products is incidental;
(4) Any facility of a manufacturer, importer, wholesaler, or distributor of tobacco products or of any tobacco leaf dealer or processor in which employees of the manufacturer, importer, wholesaler, distributor, or processor work or congregate; or
(5) A research or educational laboratory for the purpose of conducting scientific research into the health effects of tobacco smoke.
*See also* L & E § 5–608(a).

ment and the appellate court affirmed. *Id.* at 957–58. The appellate court explained that just because secondhand smoke may be a health hazard, it is not a nuisance *per se*. *Id.* at 961. The court pointed out that an Alaska statute banning smoking in schools also exempts private residences that are in the same buildings as schools. *Id.* The court said it was unwilling to find smoking to be a nuisance "absent either a provision in the rental agreement or a statute or municipal ordinance prohibiting smoking or declaring smoke a nuisance in a multi-party residence." *Id. See also America v. Sunspray Condominium Ass'n*, 61 A.3d 1249, 1256–57 (Me.2013) (finding that a condominium owner's statement that "cigarette smoke is universally understood to be a toxic and carcinogenic substance" lacked necessary "specifics concerning his exposure and the results of that exposure"); *Ewen v. Maccherone*, 32 Misc.3d 12, 927 N.Y.S.2d 274, 276 (N.Y.Sup.App.2011) ("[T]the law of private nuisance would be stretched beyond its breaking point if we were to allow a means of recovering damages when a neighbor merely smokes inside his or her own apartment in a multiple dwelling building."). Although one jurisdiction has passed a law declaring tobacco smoke a nuisance when it drifts to another person's residence,[9] the smoke must still meet a threshold level before it qualifies as a nuisance. For the reasons discussed, and the reasons outlined in this Court's opinion affirming the denial of Schuman's request for a preliminary injunction, we decline to accept Schuman's argument that any amount of cigarette smoke migrating to his property is a nuisance *per se*.[10]

---

9. *See* Utah Code Ann. § 78B–6–1101(1), (3) (West 2008) ("(1) A nuisance is anything which is injurious to health, indecent, offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property.... (3) A nuisance under this part includes tobacco smoke that drifts into any residential unit a person rents, leases, or owns, from another *residential* or commercial unit and the smoke: (a) drifts in more than once in each of two or more consecutive seven-day periods; and (b) creates any of the conditions under Subsection (1).").

10. In 2012, legislation was introduced in the General Assembly to amend the State nuisance control law (H–G §§ 20–301 *et seq.*) to alter

We turn to whether the amount of Mr. Popovic's smoking turns the act into a nuisance. In Schuman's previous appeal, this Court discussed whether Schuman had shown, at the hearing on his request for a preliminary injunction, that Mr. Popovic's smoking on his patio caused a substantial and unreasonable interference with Schuman's enjoyment of his property that would amount to a nuisance. We concluded that he did not, stating, "[o]n the evidence presented at the hearing, the court reasonably could conclude that Mr. Schuman was not suffering irreparable, or indeed any, harm, in that there was no evidence of any substantial or unreasonable interference with the use and enjoyment of his property caused by Mr. Popovic's smoking four to six cigarettes on his outdoor patio in the evenings."

█ After the trial on Schuman's substantive claims, Schuman has still not presented sufficient evidence to convince us that Mr. Popovic's smoking is a substantial and unreasonable interference with the use and enjoyment of his home. "A nuisance in fact is an act, occupation, or structure, not a nuisance *per se,* but one which becomes a nuisance by reason of the circumstances, location, or surroundings." *Adams,* 204 Md. at 170, 102 A.2d 830. For example, noise can become a nuisance if it is substantial and unreasonable. *See Gorman,* 210 Md. at 159, 122 A.2d 475 ("If noise causes physical discomfort and annoyance to those of ordinary sensibilities, tastes and habits and seriously interferes with the ordinary comfort and enjoyment of their homes, and thus diminishes the value of the use of their property rights, it constitutes a private nuisance, entitling those offended against to damages."). To identify this type of nuisance, we look at what "ordinary people, acting reasonably, have a right to demand in the way of health and comfort under all the circumstances." 1

---

the definition of "nuisance" to include "tobacco smoke that drifts from specified units into other residential units in a multidwelling property over a specified period of time as it relates to authorizing specified entities or individuals to bring an action in circuit court for relief from the nuisance." House Bill 1224 (2012 Reg. Session). However, the bill died in committee.

Harper, James & Gray On Torts § 1.25 (3d ed. 2006) (Citations omitted). Thus, it is not enough if a particular plaintiff "is offended or annoyed if he is peculiarly sensitive." *Id.*

*Exxon Mobil Corp. v. Albright*, 433 Md. 303, 71 A.3d 30, 2013 WL 4052435 (2013), is instructive on the nuisance standard. There, approximately 26,000 gallons of gas from underground tanks at a gas station in Jacksonville, Maryland leaked. [Op.] at 80–81. Following the leak, 466 residents and business owners in the area filed suit against Exxon for damages stemming from the contamination of their water supply, other consequential effects, and alleged misrepresentations. *Id.* The wells suspected of contamination were tested and approximately 65 properties did not test positive for contamination. *Id.* at 105. However, an expert testified that it was possible that the contamination would appear during the next thirty years. *Id.* at 106. Thus, the owners of these properties claimed that they could recover under several theories, including nuisance. *Id.* at 107–08.

The Court of Appeals determined that the property owners could not prove the substantial interference element of nuisance. *Id.* at 110–11. The residents argued that they had to use bottled water or Brita filters, they entertained in and about their homes less than they had before the leak, they reduced the frequency of use of their outdoor spaces, and they had to take shorter showers and baths. *Id.* These inconveniences, the Court found, did not deprive the property owners of the use of significant portions of their property, nor was the availability of their properties for their customary uses impaired substantially. *Id.* at 111.

However, in *Five Oaks Corp. v. Gathmann*, 190 Md. 348, 361, 58 A.2d 656 (1948), the Maryland Court of Appeals affirmed, with some modification, an order enjoining the owners of a restaurant from creating a nuisance. The area was a quiet residential neighborhood before the restaurant opened and the neighbors brought a nuisance suit to stop the noise and light. *Id.* at 355–56, 58 A.2d 656. The Court stated that "there are certain inconveniences and discomforts incident to

living in a city or in a thickly settled suburban community. These discomforts must be endured as part of the privilege (or at least of the fulfillment of the desire) of living in close proximity to other people." *Id.* at 355, 58 A.2d 656. However, the Court explained, these discomforts will be seen as nuisances if they exceed what is ordinarily and reasonably expected in the community and cause unnecessary damage or annoyance. *Id.* Discussing the noise, the Court explained that habitual noise, "which is so loud, continuous, insistent, not inherent to the character of the neighborhood" that it causes normal people to have difficulty sleeping, concentrating, studying, or talking, is an "unreasonable, unlawful invasion of their rights." *Id.* at 354, 58 A.2d 656 (Citation and internal quotation marks omitted).

█ In this case, if Schuman does not want to be harmed by or to smell smoke, the only inconveniences he has are that he cannot sit on his porch for up to an hour and a half each evening and has to shut his windows at that time. We discussed this on Schuman's last appeal, explaining that Schuman's neighbor testified that shutting her window stopped the smoke from coming into her unit. We said: "All [Schuman] would have to do to eliminate any offensive odor from the outdoor patio smoking would be to shut his window and, if need be, run a small fan to clear any smoke that entered his unit. The judge pointed out that Mr. Schuman had not made any effort to try this simple solution." This Court also noted that these inconveniences would not be year-round because the weather is too cold to open windows for at least half the year.

Schuman did not present any new evidence at trial that would change this Court's thinking on these facts. Schuman's inconvenience is far less of an inconvenience than the constant loud noise that infringed on the residents in *Five Oaks Corp.* It is also less of an inconvenience than having to drink bottled water, not being able to entertain as many guests, losing some use of outdoor spaces, and having to take shorter showers, which was the residents' plight in *Albright.*

Our analysis is not a declaration that tobacco smoke could never be a substantial and unreasonable interference with another's use and enjoyment of their property. Some other jurisdictions have found motions to dismiss and motions for summary judgment to be unwarranted when it comes to claims concerning traveling tobacco smoke. *Poyck v. Bryant,* 13 Misc.3d 699, 820 N.Y.S.2d 774 (N.Y.City Civ.Ct.2006), provides a good discussion of this issue. There, a landlord commenced an action against his tenants for unpaid rent. *Id.* at 777. The tenants counterclaimed for breach of the implied warranty of habitability and constructive eviction due to secondhand smoke entering their home from a neighbor's residence in the same apartment building. *Id.* The landlord moved for summary judgment on the tenants' affirmative claims and the court denied the motion. *Id.* at 780. The trial court reasoned that secondhand smoke is just as "insidious and invasive" as other conditions such as noxious odors and excessive noise, which can give rise to a claim under the implied warranty of habitability and can cause constructive eviction. *Id.* at 776–77. Thus, the court found that there were still triable issues of fact on whether the secondhand smoke rose to the level that would cause constructive eviction and a breach of the implied warranty of habitability. *Id.* at 780. *See also Birke v. Oakwood Worldwide,* 169 Cal.App.4th 1540, 87 Cal.Rptr.3d 602, 604–05 (2009) (concluding it was error to dismiss an apartment resident's action for public nuisance caused by secondhand smoke in complex's outdoor common areas.); *Herbert Paul, CPA, PC v. 370 Lex, L.L.C.,* 7 Misc.3d 747, 794 N.Y.S.2d 869, 872 (N.Y.Sup.Ct.2005) (Trial court denied motion to dismiss on claim against landlord for breach of the covenant of quiet enjoyment because triable issue existed as to whether secondhand smoke from neighbor in adjoining suite of office building caused partial constructive eviction); *Dworkin v. Paley,* 93 Ohio App.3d 383, 638 N.E.2d 636, 639 (1994) (Appellate court reversed trial court's grant of summary judgment because reasonable minds could come to differing conclusions on whether secondhand smoke in rental

unit was sufficient to constitute a breach of the covenant of quiet enjoyment).[11]

In this case, Schuman's claims were fully litigated and he simply did not present, by a preponderance of evidence, that Mr. Popovic's smoking was a substantial and unreasonable interference with the use and enjoyment of his home. We therefore conclude that the circuit court was correct to find that the inconveniences Schuman suffers simply did not amount to an unreasonable and substantial interference as required to create a cause for nuisance.

■ We note that Schuman testified that his inconveniences are worse than we described above. He said that the smoke enters his house even when the windows are closed. He also stated that the smoke is able to get in his house because "[b]efore [he] can run around and close all the windows, the smoke is in the apartment." However, Schuman's neighbors testified that the smoke did not enter their homes if they closed their windows and turned on a fan. While this Court understands that Schuman may have a particular sensitivity to the smell of smoke, nuisance is not subjective. The circuit court did not have to ignore, and was free to determine, that Schuman did not prove a substantial interference for a reasonable person by a preponderance of evidence. It was reasonable to find that Mr. Popovic's smoke would not cause physical discomfort and annoyance of persons of ordinary sensibilities, nor would it seriously interfere with the comfort and enjoyment of the average person's home.

In fact, Schuman's testimony provided evidence that Mr. Popovic's outside smoking was not substantial or unreasonable

---

11. We have found one reported decision by a trial court of limited jurisdiction involving *pro se* parties, where the court found that cigarette smoke constituted a nuisance when it entered another tenant's home, *Duntley v. Barr*, 10 Misc.3d 206, 805 N.Y.S.2d 503, 505–06 (N.Y.City Civ.Ct.2005). However, the case did not discuss how substantial and unreasonable the smoke was. For a general discussion of tobacco smoke as an issue between neighbors, *see* David B. Ezra, *"Get Your Ashes Out of My Living Room!"*: *Controlling Tobacco Smoke in Multi–Unit Residential Housing*, 54 Rutgers L.Rev. 135 (2001).

to Schuman personally. Schuman testified that he was adversely affected by the Popovics smoking in 1996. However, between 1997 and 2008 the Popovics' smoke was not a problem for Schuman because, according to Schuman, the Popovics were not smoking as much during that time. But he also said they were still smoking inside and outside of the house between 1997 and 2008. Fast forward to Schuman's lawsuit— Mrs. Popovic has passed away and Mr. Popovic, because of the injunction, is only permitted to smoke outside. Even though Schuman did not have a problem with both of the Popovics smoking a small amount inside their house and on their patio from 1997 to 2008, he now argues that even one cigarette is too many, and he rarely goes onto his patio because he is afraid that Mr. Popovic might come out and start smoking.

For the reasons discussed, the court did not err in finding that Mr. Popovic did not breach the membership contract, that Mr. Popovic's smoking did not constitute a common-law nuisance, or that Schuman was not entitled to a permanent injunction against Mr. Popovic smoking on his patio.[12]

### IV. Breach of the Implied Covenant of Quiet Enjoyment

■■■ Schuman contends that GHI is considered to be in a landlord-tenant relationship with its members. We assume, without deciding, that Schuman is correct. Schuman asserts that GHI breached the implied covenant of quiet enjoyment that is part of any landlord tenant agreement. *See* Md.Code (1974, 2010 Repl.Vol.), Real Property Article ("RP"), § 2–115 (" ... unless the lease provides otherwise, there is an implied covenant by the lessor that the lessee shall quietly enjoy the land."); RP § 8–204(b) ("A landlord shall assure the tenant that the tenant, peaceably and quietly, may enter on the leased premises at the beginning of the term of any lease.").

---

12. Although Schuman does not specifically discuss his request for declaratory judgment in his brief, for the reasons discussed in this section, the court also did not err in denying the request for a declaration that the Popovics' smoking was a nuisance under GHI's authorized use clause.

■ "In Maryland, generally, in the absence of an actual or constructive eviction, a tenant will have a claim for damages caused by conduct by the landlord that strikes at the essence of its obligations under the lease." *Nationwide Mut. Ins. Co. v. Regency Furniture, Inc.,* 183 Md.App. 710, 734, 963 A.2d 253 (2009). In our view, GHI's failure to stop Mr. Popovic from smoking would only go to the "essence of its obligations under the contract" if Mr. Popovic's smoking did amount to a nuisance. For all the reasons discussed in Section III of this opinion, GHI has not violated the implied covenant of quiet enjoyment.

## V. Trespass

■ Schuman also argues that the smoke entering his unit amounted to a trespass. A trespass is "an intentional or negligent intrusion upon or to the possessory interest in property of another." *Bittner v. Huth,* 162 Md.App. 745, 752, 876 A.2d 157 (2005). Thus, there must be an interference with the owner's possession of the property.

"Traditionally, courts held that although a personal entry is unnecessary for trespass to take place, a defendant's act must cause an invasion of the plaintiff's property by some tangible matter." *John Larkin Inc. v. Marceau,* 184 Vt. 207, 959 A.2d 551, 554 (2008) (Citations and internal quotation marks omitted). Thus, intangible intrusions like smoke, odor, light and noise are not typically actionable under a trespass theory. *See Nissan Motor Corp. in U.S.A. v. Maryland Shipbuilding and Drydock Co.,* 544 F.Supp. 1104, 1116–17 (D.Md.1982) (finding that trespass is not the appropriate theory to apply where the claim is based on smoke damage because smoke does not interfere with the owner's possession of his land). However, in some jurisdictions these invasions can be considered trespass if they cause physical damage (because that could be considered as an interference with the owner's possession). *See generally Darney v. Dragon Prods. Co. LLC,* 640 F.Supp.2d 117, 125 n. 11 (D.Maine 2009) (listing of cases holding that intangible invasions can be considered trespass if they cause physical damage).

Schuman would not prevail under either theory. Smoke is intangible and, in this case, Schuman did not argue or provide any evidence that the smoke caused any physical damage to his property. Thus, this case does not contain the proper facts to sustain an action in trespass and the circuit court was correct to find against Schuman on this count.

## VI. Negligence

We last address Schuman's assertion that the circuit court should have found that Mr. Popovic and GHI were negligent. Specifically, Schuman argues that Mr. Popovic breached his duty to protect Schuman from the dangers and irritations of secondhand smoke when he allowed smoke to migrate onto Schuman's property. Further, he contends that GHI breached its duty to protect him from the dangers of secondhand smoke because it should have stopped Mr. Popovic from smoking.

The elements of negligence are duty, breach, causation, and harm. *See Moscarillo v. Prof'l Risk Mgmt. Srvs., Inc.*, 169 Md.App. 137, 147 n. 4, 899 A.2d 956 (2006). Here, we need only focus on the absence of one element. The circuit court found that Schuman presented insufficient evidence of harm. This Court discussed the harm Schuman has suffered from Mr. Popovic's smoking in Schuman's appeal of the denial of his request for a preliminary injunction. The Court reasoned that there was no medical evidence presented that Mr. Schuman suffered any injury, or would be likely to suffer any injury, directly from Mr. Popovic's outdoor smoking.

Again, we acknowledge that cigarette smoke and its harmful effects is an extremely serious issue. But the extent of the exposure necessary to cause harm is an evolving area. In this case, no expert could testify that Schuman did or did not suffer any significant injury from secondhand smoke. One expert testified that there is no specific likelihood that Schuman will develop a disease from secondhand smoke. The Court of Appeals has explained that "testimony concerning an injury which may only possibly ensue is something too conjec-

tural for the jury to receive or consider." *Davidson v. Miller,* 276 Md. 54, 61, 344 A.2d 422 (1975). Although Schuman's claims were before a judge and not a jury, the judge did not err in finding Schuman did not provide sufficient evidence that he would suffer any health complications from secondhand smoke. *See America,* 61 A.3d at 1256–57 (finding claims in relation to secondhand smoke had to fail because the condominium owner had not alleged sufficient facts to show a cognizable injury); *Duntley,* 805 N.Y.S.2d at 505–06 (explaining that even though tenant's smoking was a nuisance, the tenant did not provide any evidence of injury and only awarded the costs the tenant paid for air purification unit).

Apart from a disease, Schuman testified that he experiences watery eyes and headaches, among other symptoms, from the secondhand smoke. However, this was in relation to smoke entering Schuman's house when Mr. Popovic and Mrs. Popovic were smoking inside their home. Schuman did not testify that he experienced these symptoms when Mr. Popovic was smoking outside his unit. Even if he had, no evidence showed a direct link between the symptoms and the secondhand smoke. Moreover, his neighbors testified that they did not smell smoke, and therefore did not experience any symptoms of secondhand smoke, when they closed their windows.

Moreover, there is a question of how much smoke is even entering Schuman's home. In the earlier appeal in this Court, we explained that because Mr. Popovic no longer smokes in his unit, the test conducted in Schuman's home was not relevant to determining whether smoke was now entering the home. The test measured the nicotine that was being transferred from the Popovics' unit to Schuman's unit, not from the outside into Schuman's unit. Additionally, Schuman's expert testified that smoke dissipates in 25 feet, then changed his mind at the later trial based on new data. Other tenants testified that they cannot smell the smoke from Mr. Popovic smoking outside if they shut their windows. Schuman testified that he also shuts his windows when Mr. Popovic is smoking. With this evidence, the circuit court did not err in determining that Schuman did not prove, by a preponderance

of evidence, that he was harmed by secondhand smoke entering his home from Mr. Popovic's patio. Therefore, it was not error for the circuit court to find against Schuman on his claims for negligence.

At oral argument, Schuman's counsel said that if we affirmed the circuit court, our decision would one day be regarded as "an aberration." He may be right (or maybe not). The result here turned on singular facts determined after a full-blown trial—particularly those relating to the practices of the cooperative, location and pervasiveness of the smoke, and the alleged harm to the complainant. This opinion does not pretend to be the final word on liability for secondhand smoke in multi-unit residential housing.

**JUDGMENT OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. CASE REMANDED FOR ENTRY OF A DECLARATORY JUDGMENT CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLANT.**