# MARYLAND REPORTS.

## WILLIAM E. WOODYEAR vs. HENRY SCHAEFER.

*Public Nuisance—Injunction against One of Many Contributors
to a Nuisance—Proceeding against All the Contributors
together—Prescription—Remedy against a Nuisance—Damages—Slaughter-houses.*

An injunction was prayed by the owner of a flour mill on a stream,
against the owner of a slaughter-house above on the same stream,
to restrain the latter from letting flow down the stream into the
mill dam and thence into the mill race, blood, offal and other matter
from slaughtered animals, on the ground that such acts created a
nuisance by rendering the water offensive and depriving the air of
its purity, thereby injuring the health of the mill operatives,
lessening the value of the mill property, and depriving the complainant of its comfortable and reasonable enjoyment. It appeared
that the defendant was one of many who contributed to create the
alleged nuisance, there being other slaughter-houses, breweries,
soap and other factories, and cattle scales, from which flowed filth
and refuse, with the occasional addition of dead animals and offal
and other offensive matter from other sources, the blood being the
principal contribution from the defendant's slaughter-house; and
that the mill had been in use for more than twenty years before
the slaughter-house was erected; and that the pollution of the
water had been gradually growing worse for some eight years
before suit was brought. HELD:

1st. That the defendant was entitled to the relief prayed; and that
he would be entitled to the same relief against all those contributing to the nuisance, and if it should not cease upon the granting of
the injunction in this case, he would be entitled to join in one
case all who continued the injury.

Woodyear *vs.* Schaefer.

2nd. That the wrong complained of amounted to a public nuisance· for which there could be no prescription.

The remedy in equity to prevent a nuisance is generally said to exist,. whenever the nature of the injury is such, that it cannot be adequately compensated by damages, or will occasion a constantly recurring grievance. Especially is an injunction the only effectual remedy, when the injury is caused by so many that it would be difficult to apportion the damage, or say how far any one may have contributed to the result, and so damages would likely be but. nominal, and repeated actions, without any substantial benefit, might be the result.

Slaughter-houses are *prima facie* nuisances.

APPEAL from the Circuit Court, for Baltimore County,. in Equity.

The case is stated in the opinion of the Court.

The cause was argued before BARTOL, C. J., ALVEY,. IRVING and MAGRUDER, J.

*Sebastian Brown* and *I. Nevett Steele*, for the ·appellant.

Even assuming that the nuisance complained of in this. case is a public and not a private one, the complainant is. entitled to an injunction. *Hamilton vs. Whitridge*, 11 *Md.*, 128, 135, 146, 147; *Adams vs. Michael*, 38 *Md.*, 123; *Dittman vs. Repp*, 50 *Md.*, 516.

The degree and extent of the nuisance is cause not alone· by the defendant, but by the combined acts of himself and a hundred other butchers, together with brewers, hair manufacturers and soap boilers, who permit their refuse matter· to float into Gwynn's Run and Gwynn's Falls, and from thence into complainant's race. Each and every one is liable to a separate action and can be separately restrained; and it is no excuse that other butchers had for many years been guilty of a similar nuisance. *Snow vs. Williams*,. 16 *Hun.*, (*N. Y.*,) 468; *Chipman vs. Palmer*, 16 *N. Y. St.*,.

517; *Wood on Nuisances, p.* 697, *&c., secs.* 681, 683-4-5-6 *and* 689, *pp.* 714, 715; *Wright vs. Moore,* 38 *Ala.,* 593; *Conservators of River Thames vs. Mayor of Kingston,* 12 *L. T. N. S.,* 668-9; 4 *Robertson,* 469, 470; 2 *Ch. App.,* 478.

All unlawful acts which deprive a man of the reasonable and comfortable enjoyment of his property constitutes a nuisance. *Walter vs. Selfe,* 4 *Eng. L. & E.,* 22-3.

Slaughter-houses are *prima facie* nuisances. *Wood, secs.* 498-9; *Catlin vs. Valentine,* 9 *Paige Ch., N. Y.,* 575.

If slaughter-houses are built outside of a city, still when reached by the line of improvements they must give way, and the fact of prior user is no defence. *Brady vs. Weeks,* 3 *Barb., N. Y., S. C.,* 156; *Rex vs. Cross, &c.,* 2 *C. & P.,* 483-6; *Wood, secs.* 504 *to* 512.

Blood running from a slaughter-house into a stream constitutes a nuisance which a Court of equity will abate. *Attorney-General vs. Stewart & Taylor,* 5 *C. E. Green, N. J. Ch.,* 417; *Commonwealth vs. Upton,* 6 *Gray,* 473; *Holsman vs. Bleaching Co.,* 1 *McCarter, N. J.,* 338.

*H. P. Jordan* and *R. J. Gittings,* for the appellee.

If the facts alleged be true, the remedy is by indictment for a nuisance. If complainant has suffered special and peculiar damage, beyond and different from that which affects the public at large, he has his remedy by action at common law. *Houck vs. Wachter,* 34 *Md.,* 265; *Fort vs. Groves,* 29 *Md.,* 188.

To justify a resort to a Court of equity, the damage must be irreparable, and such as could not be adequately compensated by an action at law. An injunction in nuisance cases is granted, "only in cases where the fact is clearly made out upon determinate and satisfactory evidence. For if the evidence be conflicting, and the injury to the public doubtful, that alone will constitute a ground for withholding this extraordinary interposition." 2

*Story Eq. Jur.*, (12th *Ed.*,) secs. 924, 925, *and notes ; Attorney-General vs. Cleaver*, 18 *Vesey,* 211; *Coe vs. Winnipisiogee Man. Co.,* 37 *N. H.,* 254; *Fort vs. Groves,* 29 *Md.,* 188; *Adams vs. Michael,* 38 *Md.,* 123 : *Earl of Ripon vs. Hobart,* 3 *Mylne & Keene,* 169; *Houck vs. Wachter,* 34 *Md.,* 273.

In considering this case, the Court must regard only the damage resulting to complainant from respondent's slaughter-house, not the damage from other slaughter-houses or other causes. If complainant had sued respondent at law, he could only recover for that portion of his injury, if any, which he could trace to respondent and his slaughter-house. *Chipman vs. Palmer,* 16 *N. Y.,* (*Sup. Ct.,*) 517.

In determining the question of nuisance, the Court must look to the locality and all the surrounding circumstances. A tallow chandler setting up his business among other tallow chandlers, and increasing the noxious smells of the neighborhood, is not guilty of creating a nuisance unless the annoyance is much increased by the new factory. *Rex vs. Bartholomew Reville, Peakes' Cases,* 91; *Dittman & Berger vs. Repp,* 50 *Md.,* 516.

The long silence and acquiescence of complainant, and delay in making his complaint, are of themselves sufficient reason for refusing an injunction. *B. & O. R. R. Co. vs. Strauss,* 37 *Md.,* 237; *Attorney-General vs. Gee,* 10 *L. R. Eq.,* 131.

MAGRUDER, J., delivered the opinion of the Court.

The bill was filed by the appellant to obtain an injunction to restrain a nuisance.

The appellant has been since 1853 the owner and proprietor of a large flour mill, in Baltimore City, on Gwynn's Falls, below its junction with a small stream called Gwynn's Run. Before the purchase of the mill, he had operated it from about 1849, and a mill on that site had been operated for over fifty years.

Woodyear *vs.* Schaefer.

The appellee (the defendant below) is a butcher, having a slaughter-house on Gwynn's Run in Baltimore County, about a mile above the mill.

The complaint is that the appellee for several years past, and up to the time of filing the bill, has emptied, and still continues to empty or allows to flow into the said run, the blood from slaughtered animals, and also continuously discharges from his slaughter-house into the run, the entrails and other offal from slaughtered animals, and that this blood and offal, naturally and necessarily by the flow of the stream, makes its way into the appellant's mill dam, and from that into the mill race, whereby the water in the race and its banks are mixed with and covered by said animal matter, causing and creating a nuisance, the said matter decomposing and creating an offensive smell, at times unbearable ; the atmosphere filled with the stench is not only disagreeable and uncomfortable to health, but it causes and tends to create disease ; that this animal deposit becomes greater each year; that the run from the slaughter-house to the dam is little better than a cesspool ; that as the deposit increases the stench increases ; that until within two years, the appellant and his hands and operatives only suffered inconvenience and discomfort but now especially in the hot days of summer, the stench has made most of the operatives sick, even making the hands so sick as be to unable to retain their food, compelling them at times to quit the premises, whereby the mill has to be stopped, and to obtain an atmosphere that can be even endured, the flow of water to the mill has to be stopped, and the contents of the dam emptied into the falls ; that the operatives complain of the discomforts connected with their employment, and that unless the nuisance shall be abated, it is only a question of time when the operations of the mill shall be compelled to cease ; that the acts complained of are a nuisance, prejudice and lessen the value of the mill, and deprive the owner of the comfortable and

reasonable enjoyment of it, and that he is without adequate remedy at law, and can only have full relief in equity, and an injunction is prayed restraining the appellee, his agents, employees and servants from emptying, depositing, discharging, or allowing to flow into Gwynn's Run, from his premises any blood, entrails, or offal from slaughtered animals.

The answer does not deny the condition of the stream as charged, nor the effects produced thereby, but denies that any offensive matter is thrown in the stream by the appellee, that the only matter allowed to flow into the stream from his premises, is beef's blood, in quantities not exceeding fifteen buckets full, upon an average, per week, which blood cannot be seen or detected in the waters of the said run over one hundred yards below the slaughter-house, and cannot cause any offensive deposit, or otherwise create a nuisance or injure the appellant; that if any cause of complaint exists, the appellant is himself responsible for it by damming up the stream, which if allowed to flow unobstructed would be free from cause of complaint, and by allowing vegetable matter to accumulate and decompose in the dam and race, and by not using proper appliances to keep out offensive matter; that on Gwynn's Falls and the run there are a large number of slaughter-houses and other establishments, which (some for over thirty years, and nearly all for over twenty years,) have used these streams as sewer-ways, and that the blood from all these slaughter-houses, and the refuse from breweries, soap and other factories, have flowed into these streams, for all this period of time, without complaint; and that there are cattle scales over and adjoining the run, in which are kept large numbers of swine, from which large quantities of filth and refuse matter are washed and thrown into the run and carried down with the current; that the appellant's remedy is at law and not in equity; and that to grant him the relief

prayed would be ruinous to a vast amount of property owned by butchers and others, and destructive to one of the most important branches of trade in the State, besides working a most grievous wrong to the appellee.

A vast mass of testimony was taken, which although somewhat conflicting as to the point whether any solid matter was thrown from the appellee's premises into the stream, yet establishes the offensive condition of the water of the run, and in the mill dam and race quite as fully as the bill charges, and shows the condition of the air at the mill to be at times so offensive as to be practically unbearable, although at the same time showing other causes, besides the slaughter-house of the appellee, for the existence of the nuisance, there being a large number of slaughter-houses on the falls and run, besides breweries, soap and other factories, and the cattle scales, with the occasional addition of dead animals, and offal, and other offensive matter from various other sources. So that throwing out of consideration the fact of solid animal matter coming from the appellee's slaughter-house, which is shown to have been only an occasional occurrence, if it has existed at all, as it probably has in a measure, judging from all the evidence, we are left to the blood which is proved to have flowed regularly from the slaughter house of the appellee, though in comparatively moderate quantities, as the principal contribution by the appellee in common with a large number of others, to the serious injury and grievance from which the appellant is manifestly so great a sufferer.

So that the question to be decided is, can a Court of equity intervene to stop the appellee from committing the acts which constitute such an inconsiderable part of the wrong complained of, and which if stopped, would leave the appellant still suffering from almost as great a grievance as he is now subject to ?

As to the right of the appellant to the free use of the water of the stream for the purposes of his mill there can

be no doubt. The site has been used for the present mill,. and one which it succeeded, uninterruptedly for fifty years or more. The appellant has carried it on since 1849, and has owned it since 1853, and the right to the free and unobstructed use of the water for the purpose of operating the mill has been maintained without pretence of objection or interference for all this long period, and has thus become a prescriptive right, which no prescriptive right to use the stream for a sewer-way, if such exists, could countervail, for the one must be so used as not to impair or destroy the other. But the wrong complained of, and disclosed by the evidence, amounts to a public nuisance, for which there can be no prescription. *Wood on Nuisances, sec.* 724; *Com. vs. Upton*, 6 *Gray*, 473; *Mills vs. Hall*, 8 *Wend.*, 315.

But the appellee's slaughter-house was not erected until about 1874, and the pollution of the stream did not give any trouble of material importance until about eight years ago, since which time it has been gradually growing worse. It was natural for the complainant to bear evil as long as it was slight, rather than engage in a tedious and expensive litigation.

He could not be expected to sue until his right was materially interfered with. *Crosby vs. Bessey*, 49 *Me.*, 539.

If he had complained sooner he might have been unable to make out a case of such interference with the reasonable enjoyment of his property as would have entitled him to the aid of a Court of equity. Until he received some substantial injury he could not be expected to sue, and so there could be no prescription as against his right to the free user of the water, until that right was. interfered with for the purpose for which he used it, and then only to the extent of that interference.

The right of a riparian owner to have the water of a stream come to him in its natural purity, or in the con-

dition in which he has been in the habit of using it for the purposes of his domestic use or of his business, is as well recognized as the right to have it flow to his land in its usual quantity. See *Wood on Law of Nuis.*, sec. 677; *Gladfelter vs. Walker*, 40 *Md.*, 1, 13; *Wood vs. Sutcliffe*, 2 *Sim. N. S.*, 163, 8 *Eng. L. & Eq.*, 217; *Stockfort Waterworks Co. vs. Potter*, 7 *H. & N.*, 159.

And where any prescriptive right to pollute a stream has been gained, it can only be maintained to the extent that it is shown to have injuriously affected the interest complaining.

In the case of *Goldsmid vs. The Tunbridge Wells Imp. Comm'rs*, 1 *L. R. Ch. App.*, 349, where the pollution of a stream which had been going on for over twenty years, was complained of, and the continuance of the pollution was sought to be maintained on the ground of a prescriptive right, an injunction was maintained on the ground that the right to pollute the stream could only be acquired by a continuance of the discharge of the sewer, prejudicially affecting the estate, at least to some extent, for the period of twenty years, and that the discharge had not prejudicially affected the estate for so long a period. See *Moore vs. Webb*, 1 *C. B. R.*, (*N. S.*) 673.

In the case before us the appellant suffered no injury at all eight years ago, and could hardly be expected to go a mile away to look after the mode in which the appellee was conducting his business upon his premises, when he himself was subjected to no inconvenience, and could not look to the acts of the appellee as likely to subject him to loss.

It is no answer to a complaint of nuisance that a great many others are committing similar acts of nuisance upon the stream. Each and every one is liable to a separate action, and to be restrained. *Wood on L. of Nuis.*, sec. 689; *Crosley vs. Lightowler*, 3 *L. R. Eq. Ca.*, 279; *Chipman vs. Palmer*, 16 *N. Y. Sup. Ct.*, 517.

The extent to which the appellee has contributed to the nuisance, may be slight and scarcely appreciable. Standing alone, it might well be that it would only, very slightly, if at all, prove a source of annoyance. And so it might be, as to each of the other numerous persons contributing to the nuisance. Each standing alone, might amount to little or nothing. But it is when all are united together, and contribute to a common result, that they become important as factors, in producing the mischief complained of. And it may only be after from year to year, the number of contributors to the injury has greatly increased, that sufficient disturbance of the appellant's rights has been caused to justify a complaint.

One drop of poison in a person's cup, may have no injurious effect. But when a dozen, or twenty, or fifty, each put in a drop, fatal results may follow. It would not do to say that neither was to be held responsible.

In that state of facts, as in the one presented by this case, each element of contributive injury is a part of one common whole, and to stop the mischief of the whole, each part in detail must be arrested and removed.

The right to pure air is held to be a natural right, and as incident to the enjoyment of land. Its sensible pollution by the exercise of a noxious trade, whereby the comfortable enjoyment of property is diminished, is a nuisance, against which Courts of equity will always, when the state of the facts applies, give relief, and such injury as is not fairly and reasonably incident to the ordinary use of property, and renders surrounding property physically uncomfortable, will be restrained. *Wood L. Nuis., sec.* 791; *St. Helen's Sm. Co. vs. Tipping,* 11 *H. of L. Ca.,* 649; *Walter vs. Selfe,* 4 *Eng. L. & Eq.,* 20.

And the remedy in equity to prevent a nuisance, is generally said to exist whenever that nature of the injury is such that it cannot be adequately compensated by damages, or will occasion a constantly recurring griev-

ance. An injunction is the only effectual remedy to stop the injury. *Adam's Eq.*, (211.)

Especially is this the case when the injury is caused by so many, that it would be difficult to apportion the damage, or say how far any one may have contributed to the result, and so damages would likely be but nominal, and repeated actions, without any substantial benefit, might be the result.

This very difficulty in obtaining substantial damages was stated in *Clowes vs. Staffordshire, &c. Co.*, 1 *L. R., Ch. Ap.*, 142, to be a ground for relief by injunction. See *Lingwood vs. Stowmarket Co.*, 1 *L. R. Eq. Ca.*, 77.

Slaughter-houses are held to be *prima facie* nuisances, *Wood L. Nuis.*, sec. 504; and that, where originally in a remote place, but the building of houses near by renders them noxious. *Rex vs. Cross*, 2 *C. & P.*, 483; *Catlin vs. Valentine*, 9 *Paige*, 575; *Peck vs. Elder*, 3 *Sanf.*, (*N. Y. Sup. Ct.*,) 126; *Brady vs. Weeks*, 3 *Barbour, Sup. C. R.*, 157.

It is held that blood running into a stream, constitutes a nuisance that will be restrained. In *Atty-Gen. vs. Stewart, &c.*, 5 *C. E. Green*, 419, the defendants were enjoined from allowing blood from slaughtered animals to run into a stream, on the ground that it was *per se* a pollution, and would render the stream offensive. In *Rex vs. Neil*, 2 *C. & P.*, 185, the right to stop nuisances in cases where many contribute, is thus stated:

"It is not necessary that a public nuisance should be injurious to health; if there be smells offensive to the senses, that is enough, as the neighborhood has a right to fresh and pure air. It has been proved that a number of other offensive trades are carried on near this place, &c., but the presence of other nuisances will not justify any one of them; for the more nuisances there were, the more fixed they would be; however, one is not to be less subject to prosecution, because others are culpable."

The law governing the right to an injunction to restrain a nuisance, is well stated in *Holsman vs. Boiling Sp. Bl. Co.,* 1 *McCarter,* (*N J. Ch.,*) 335, where a great many leading authorities are collected.

And the law is fully laid down by this Court in *Hamilton vs. Whitridge,* 11 *Md.,* 128; *Adams vs. Michael,* 38 *Md.,* 123 ; and *Dittman vs. Repp,* 50 *Md.,* 516.

And the doctrine is well settled that where the nuisance operates to destroy health, or impair the comfortable enjoyment of property, an action at law furnishes no adequate remedy, and protection by injunction must be given. *Daniell's Ch. Pr.,* 1858; 2 *Story's Eq.,* 926; 2 *Johns. Ch. R.,* 166.

We think that the complainant has shown himself to have suffered greatly, and likely to suffer more in the future, from the nuisance to his property, whereby it is likely to become practically valueless, unless the injury is restrained. He will be entitled to the same relief against all the parties contributing to the injury, and as all are together contributing to the same result, if the injury does not cease upon the granting of the injunction in this case, he may be entitled to join in one case, all who still continue the injury; upon the principle of the case of *Thorpe vs. Brumfitt,* 8 *L. R.* (*Ch.,*) 656, where it is held, that the acts of several persons, acting separately, and without concert and entirely independent of each other, may together constitute a nuisance, when the acts of either one alone would not create it, and such persons may be joined as defendants in a bill for an injunction. And this illustration is given : "Suppose one person leaves a wheelbarrow standing on a way, that may cause no appreciable inconvenience, but if a hundred do so, that may cause a serious inconvenience, which a person entitled to the use of the way, has a right to prevent; and it is no defense to any person among the hundred, to say that what he does, causes of itself no damage to the defendant." See *Wood L. Nuis., sec.* 800.

Woodyear *vs.* Schaefer.

It has been urged in argument, that to restrain the appellee and others engaged in the same occupation, from doing the acts complained of, will prove ruinous to their business, and destructive to a vast amount of capital invested in the business. But we do not think the apprehension is well founded. Experience and the necessity of the case, have elsewhere applied the remedy in a manner entirely satisfactory to those engaged in the business, and to the great relief of the public; besides converting into a matter of revenue the refuse and offal before constituting an intolerable nuisance. The business of the appellant and those situated like him, will certainly be destroyed, if the condition of things shown in this case is allowed to go on and increase, to say nothing of the interference with the comfort, health and development of the whole neighborhood affected by the pollution of the stream. Certainly, there must be a remedy, and a prompt and thorough one for such an evil, in and adjacent, to a large and rapidly growing city; and we know of no remedy equal to the emergency, but that of the protective and preventive interference by injunction.

The appellee and those situated like him, must learn to act upon the maxim: *sic utere tuo ut alienum non laedas.*

The *pro forma* decree below, will therefore be reversed, and the cause remanded, in order that an injunction may be issued as prayed in the bill. Under the circumstances of the case, we think the costs should be equally divided between the parties.

> *Decree reversed, and*
> *cause remanded.*

(Decided 30th June, 1881.)