REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 01487

September Term, 2012

BLUE INK, LTD.

v.

TWO FARMS, INC. D/B/A ROYAL
FARMS, INC.

Zarnoch,
Kehoe,
Leahy,

JJ.

Opinion by Leahy, J.

Filed: July 30, 2014

Drive-in movie theaters, like soda fountains, juke boxes, and The Platters, are instances of 1950s post-war Americana that trigger instant feelings of nostalgia. Maryland once boasted as many as 47 drive-ins;[1] today, however, only Bengies Drive-In Movie Theatre ("Bengies") remains. This case involves a jury's verdict in favor of Bengies against Royal Farms for private nuisance. The jury awarded Bengies $838,000.00 in damages to construct a fence to block light that emanates at night from the Royal Farms. The Circuit Court for Baltimore County considered Royal Farms' Motion for Judgment Notwithstanding the Verdict ("JNOV") and, after concluding there was insufficient evidence for a jury to find a private nuisance, set the jury's verdict aside and entered judgment in favor of Royal Farms.

On appeal, Bengies, through its operator Blue Ink, Ltd., presents one question for our review,[2] which we have rephrased as follows:

> Was the evidence presented at trial, when viewed in the light most favorable to Bengies Drive-In, legally sufficient for the jury to find the existence of a private nuisance by a preponderance of the evidence?

Two Farms, Inc. (doing business as "Royal Farms") filed a Cross-Appeal raising an additional issue, which we have rephrased as follows:[3]

---

[1] KERRY SEGRAVE, DRIVE-IN THEATERS: A HISTORY FROM THEIR INCEPTION IN 1933 app. 6 (1992) (citing 1958 Census of Business, vol. 5, Selected Services—Summary Statistics (Washington, D.C.: United States Bureau of the Census, 1961)).

[2] Bengies phrased the question as, "Did Appellants present evidence that, taken in the light most favorable to them, legally supported their claim for private nuisance?"

[3] Royal Farms phrased the question as, "Did Appellant/Cross-Appellee Blue Ink Limited meet its burden to prove damages using the proper measure of damages?"

1

In the event this Court concludes that the trial court erred in granting the Motion for JNOV, did Blue Ink Limited meet its burden to prove damages using the proper measure of damages?

Maryland requires that in order to recover for private nuisance, a plaintiff must demonstrate that the defendant's interference with plaintiff's property rights is both unreasonable and substantial, and that the harm or inconvenience created by such interference is "objectively reasonable" to the ordinary person. Accordingly, we find the evidence presented at trial was not legally sufficient to support a jury verdict in favor of Bengies against Royal Farms for a private nuisance. In light of this holding, we do not address the Cross-Appeal. We affirm the judgment of the Circuit Court for Baltimore County.

## BACKGROUND

A. The Bengies Drive-In

In the late 1950s, Jack K. Vogel and his three brothers constructed Bengies Drive-In, which has remained a family business since its establishment. Eventually, D. Edward Vogel ("Mr. Vogel") began operating the drive-in and in 2000, negotiated a buy-lease agreement to purchase Bengies from his parents, Jack and Aileen Vogel. In order to facilitate a commercial loan in connection with the transfer,[4] Mr. Vogel needed to ensure that the property was accurately zoned. During the re-zoning process, Mr. Vogel entered into a Restrictive Covenant Agreement, dated August 25, 2004, with a community group

---

[4] At trial, Mr. Vogel testified that, "when I went for the loan it turns out . . . [that] the Bengies Drive-In Theater did not sit upon property that was zoned correctly to make that purchase."

2

called Bowleys Quarters Improvement Association. The Association agreed to forego opposition to the zoning reclassification in exchange for Bengies' agreement limiting future expansions on the property to an indoor theatre, a second outdoor drive-in screen, miniature golf, batting cages, a restaurant, a dairy bar, cell communications, and a souvenir shop. Drawings exhibiting two possible locations for a second screen accompanied the Agreement. Mr. Vogel officially acquired the property in December 2007, but apart from a cell communications tower, none of the other improvements were constructed.[5]

Today, Bengies is located at 3417 Eastern Boulevard in an area that has been commercially developed for many years. Other businesses surrounding Bengies and pre-dating the Royal Farms include a Wal-Mart, McDonald's, Home Depot, Rite-Aid, and a restaurant called "By the Docks."

B. The Royal Farms

---

[5]

    In its Memorandum Opinion and Order Granting Defendant's Motion for Judgment Notwithstanding the Verdict ("Memorandum Opinion"), the Court found:

> No evidence was presented that any of these expansion or improvements ever occurred, except that a cell communications tower was later constructed – in close proximity to where the proposed second screen would have been located had that option been pursued. At best, the evidence of the content of the Restrictive Covenant, coupled with Mr. Vogel's testimony, established that there were once "proposals" made to expand the business operation of the drive-in and that one of these proposals involved the construction of a second outdoor movie screen. Plaintiff never acted upon that proposal.

Peppermint Woods, Ltd. owns the property at 3300 Eastern Boulevard located on the opposite side of Eastern Boulevard across from Bengies.[6] In 2003, Peppermint Woods, Ltd. filed a petition for special exception with the Zoning Commissioner of Baltimore County for the construction of a service station and accompanying carryout restaurant and rollover car wash. Mr. Vogel attended the public hearing on special exception to represent Bengies' interests. The Zoning Commissioner granted the petition, subject to submission of "a landscape and lighting plan for review and approval by the Office of Planning and Avery Harden, Landscape Architect for Baltimore County" that "provide[s] sufficient screening so that security lights, permanent lighting and vehicle headlines do not inappropriately spill onto adjacent properties, particularly the Bengies Drive-In Movie Theater."

Avery Harden and the Office of Planning thereafter approved the plans for the construction of a convenience store, gas pumps, and a car wash. In an e-mail dated October 8, 2008, Avery Harden stated, "All together [Royal Farms' use of new LED technology] sounds like a precedent setting lighting design for convenience stores in Baltimore County. I can now point to this for others to follow. The drive-in should be fine."

The Royal Farms opened its doors for business in December 2008. The general

---

6

Bengies voluntarily dismissed Peppermint Woods, Ltd. as a defendant in the action more than a year prior to trial.

layout of the subject Royal Farms may be described as follows:[7]

> [T]he gas station aspect of the facility consists of a number of gasoline pumps located below a canopy of the type designed to protect those pumping gas from inclement weather. The canopy runs parallel to Eastern Boulevard; the pumps are located below it. The pumps are illuminated by Crossover Ambient Canopy Lights and Crossover Focus Canopy Lights, which are aimed downward from the canopy to allow those pumping gas at night to see. Behind the canopy sits the Royal Farms convenience store, 3936 square feet in size. . . . Behind the convenience store sits a car wash. . . . There are parking spaces about the convenience store, illuminated by lighting mounted on the poles pointed downwards toward the parking spaces. . . . There are several lighted signs—white, green and blue in color on and about the convenience store property . . . which can be seen from the drive-in. . . .

Mr. Vogel filed an official complaint about the Royal Farms lights with Baltimore County Department of Code Enforcement (the "Department"). In 2010, when the Department declined to issue a citation for the lights, Mr. Vogel sought a Writ of Mandamus from the Circuit Court for Baltimore County, requesting that the court compel the Department to issue a citation. The circuit court dismissed the complaint.

C. The Litigation

On June 28, 2010, Bengies, by and through Blue Ink, Ltd. and The Last Picture Show, LLC (the landowner), filed a lawsuit against Peppermint Woods, Ltd. and Two Farms, Inc. in the Circuit Court for Baltimore County, alleging claims of negligence, trespass, and private nuisance relating to the lights emanating from the Royal Farms

---

[7] We quote the circuit court's description of the layout in its Memorandum Opinion. The court noted that apart from the Development Plan and "Site Lighting" drawing, neither party introduced evidence detailing the layout of the Royal Farms or the location or direction of its lighting.

5

premises onto Bengies' property.[8]   On May 22, 2012, the case proceeded to trial on the negligence and private nuisance claims.[9]

At trial, Mr. Vogel testified that the lights emitted from the Royal Farms prevent him from executing his plan to build the second screen.  He admitted that no artificial light from Royal Farms is aimed or directed at the currently existing screen, but claimed that  some of the lights are aimed "inadvertently" at the spot reserved for the second screen by "bouncing off of the poles" located in the back of the theatre.  At the time of trial, Mr. Vogel had not initiated the steps necessary to build the second screen, such as

---

[8]
     Historically, drive-in theaters across the country have contended with nuisance actions brought against them for the antipodal display of light:  movie scenes in view of the general public.  Intending to prevent youths from viewing obscene films, counties in several states enacted and enforced laws prohibiting drive-ins from screening such films if those films were visible from public property; however, these ordinances had to be carefully crafted in order to satisfy constitutional muster. *See Erznoznik v. City of Jacksonville*, 422 U.S. 205 (1975) (holding that a Jacksonville, Florida ordinance, intended to prohibit youths from viewing obscene films, was facially invalid due to its over-broad language); *Rabe v. Washington*, 405 U.S. 313 (1972) (holding that a Washington ordinance was impermissibly vague by failing to afford fair notice that criminal liability could be imposed based on a showing's location).

     Interestingly, in 1974, the Baltimore County Council passed such an ordinance. Bill No. 8-74, 1974 Leg. (Balt. Cnty., Md. Jan. 7, 1974) (codified at Balt. Cnty. Code § 21-9-102 (2004)).  This ordinance prohibited drive-ins from showing x-rated films that could be seen by the nonpaying public, which was deemed to be a public nuisance, and declared the penalty to be a misdemeanor subject to a fine not to exceed $100.  The County then charged the owner of Valley Drive-In under this provision for playing "Supervixens" in a location visible from a public road.  SEGRAVE, *supra*, at 159.  Based on Supreme Court's decision in the *Erznoznik* case, the Maryland district court judge threw the charges out, stating "I don't see how we can stop it."  *Id.*

[9]
     The circuit court granted Royal Farms' motion to dismiss as to the trespass claim, and then granted Defendant's Motion for Judgment at the close of Plaintiffs' case against Last Picture Show, LLC.

6

applying for a permit. During cross-examination, Mr. Vogel admitted that the potential location for the second screen, as represented in the Covenant Agreement, would have been farther away from the Royal Farms store.

Mr. Vogel described himself as a diligent owner when monitoring activities affecting the drive-in's lighting and provided numerous examples of how he has resolved lighting concerns with other local business owners in the area. To provide examples, Mr. Vogel stated that he attended the hearing when the Wal-Mart opened, but ultimately concluded that the lights were not problematic. The Rite-Aid also assisted Mr. Vogel in correcting its light, and the "By the Docks" restaurant owner replaced his outdoor lights with smaller bulbs to reduce the brightness per Mr. Vogel's request.

Mr. Vogel framed the problem in this case as "[t]he light interfer[ing] with the business that thrives on darkness." When asked during direct examination if there is "any special sensitivity to light in the operation of a drive-in movie theatre," Mr. Vogel responded that with any theatre, "you have to watch light, of course, indoor or drive-in." During cross-examination, Mr. Vogel responded "yes" when asked whether drive-in theatres are unique in their need for darkness. He also conceded that if he owned a tire store or a doctor's office, the lights probably would not bother him and that he could not "think of any other occupation that would require that unique night sky." When asked whether he was sensitive to light, Mr. Vogel admitted that he was, explaining, "I've been trained to, in the art of projection and I am, I know how to keep that picture correct."

According to Mr. Vogel, attendance and profits at Bengies have increased

7

annually.  Further, Mr. Vogel did not receive customer complaints about the Royal Farms lights, even though he has a method in place for receiving complaints and had received complaints about other matters.

Both parties called several witnesses to testify about whether the Royal Farms lights created a nuisance to Bengies.  On behalf of Bengies, Dr. Brett Levinson, qualified as an expert in ophthalmology, provided testimony about the anatomy and mechanics of the human eye.  To a reasonable degree of scientific certainty, Dr. Levinson opined that the blue and green lights emanating from Royal Farms, which is situated in viewers' peripheral vision, are "stimuli that's very well picked up by the retina" and that eyes are "highly sensitized to things at night, especially low light and blue greens."

Bruce Dunlop, qualified as an expert in lighting design, opined to a reasonable degree of scientific certainty that the "Royal Farms store's lights creates [sic] a distraction for the moviegoer at the Bengies" and that "light pollution exists at the Bengies."  Mr. Dunlop defined light pollution as "light that emanates from the property and causes harm or inconvenience to another" and light trespass as "light that is generated on one property and impinges on another."[10]

Mr. Dunlop also testified that "[o]ne reason [the lights create a distraction], other

[10] Mr. Dunlop measured the light, or "luminance," using the metric of foot lambert, as opposed to foot candela, because foot lambert is the established measurement for obtrusive light pursuant to the Illuminating Engineering Society.  Mr. Dunlop testified that "candela is the specific direction of a beam of light" and "foot lambert takes into, depending on the luminance meter you're using, the one degree spot meter measures the luminance at that point."  In other words, "foot candle is light delivered to a point" and "candela is the direct brightness of that source."

than the brightness and proximity of the lights to the patron, is the color of the light. The lighting at the Farms stores is cool white LED's and cool white metal halide sources, both of which the eye is sensitive to at night." He noted that eyes are also sensitive to blue and green lights at nighttime. Specifically, Mr. Dunlop testified that the pylon sign, the gas canopy, and the accent lights on the advertising above the pumps and car wash are the brightest lights. The accent lights refer to advertising panels above the pumps; these panels have LED accent lights, which are aimed to illuminate a vertical surface. In doing so, the lights reflect light off of the blue and green signs. In order to resolve the light pollution, Mr. Dunlop concluded that a barrier could block the light physically.

Avery Harden was also called to testify on behalf of Bengies, and said that he thought the glare coming from lights over the pumps at the Royal Farms was a problem, but that "[th]ere is a traffic signal that would be a little more off to the right . . . than the Royal Farm that could be an issue too." When asked whether Baltimore County made a determination about the Royal Farms' lights, Mr. Harden replied, "Yeah, we judged it to be in compliance."

On behalf of Royal Farms, Jayme Leonard, qualified as an expert in the discipline of lighting convenience stores and gas stations, opined that Royal Farms' site was very well-contained and did not generate light pollution; in fact, he believed that the lighting was too low for security purposes. Mr. Leonard also testified that from a foot candle measurement, there is no light pollution or light trespass from the Royal Farms store onto Bengies' property. Mr. Leonard based his opinions on his visual observations, not from

9

meter measurements.

Timothy Michael Kotroco, the former Director of Baltimore County's Department of Permits and Development Management, testified about investigating Mr. Vogel's formal complaint regarding Royal Farms' light. In his opinion, "there wasn't anything occurring that could infringe upon the people's enjoyment there to watch a movie" and "the lights from the Royal Farms store did not inappropriately spill onto the Bengies Drive-In."

On the issue of damages, Joseph Stallmann, Jr., president of Olympic Fence and Guardrail, testified that he consulted with Mr. Vogel about constructing an 850 x 25 foot stone wall to shield Bengies from Royal Farms' light. An exhibit admitted into evidence estimated the cost of construction as $798,000.00. Francesco Taliano, a partner at Patuxent Insurance Group, testified that the annual insurance premium for a fence of that size would be $10,000.00. This figure is based on the value of the fence, as opposed to its size.

At the close of evidence, the circuit court granted Royal Farms' Motion for Judgment as to the negligence claim, but denied its Motion as to the private nuisance claim. The jury found in favor of Bengies and awarded $838,000.00 in damages, valuing the cost of constructing a fence to shield Bengies from Royal Farms' lights and an insurance policy. On July 9, 2012, Royal Farms filed a Motion for JNOV or, in the alternative, Motion for New Trial. On September 13, 2012, the circuit court issued a Memorandum Opinion and Order granting Royal Farms' Motion for JNOV.

10

The court observed that the jury was provided with "scant proof" depicting the actual lighting conditions at the drive-in at night; that neither party requested a view of the properties pursuant to Maryland Rule 2-515; and that, overall, there was "little objective evidence presented as to the intrusive or non-intrusive effect of the Royal Farms' lighting on the drive-in." The court noted that no customer testified that the lights from the Royal Farms store ever interfered with their viewing experience, and that "Mr. Vogel actually testified that '[e]ach year [business] increases and it has had that habit since 1989 when I took over.'" Plaintiff's evidence was beside the point:

> Exhibits 10 through 15, introduced by Plaintiff strictly for the purpose of showing the locations of light meter readings, reflect objectively that the Farm Stores' lighting does not sit behind the movie screen, or anywhere near the movie screen, so as to diminish or distort the projected movie picture, but rather is located off to the right of the movie screen and on the far side of Eastern Boulevard - - at a distance from the Bengies property.

Based on what was presented at trial, the court found:

> All of the evidence adduced in this case, demonstrative and testimonial, established that Royal Farms lighting is not aimed, directed or oriented towards the Bengies property. The evidence established that the Royal Farms' light does not encroach onto the Bengies property or otherwise intrude or spill across Eastern Boulevard onto the drive-in land. And the evidence established that the Royal Farms' lighting is located away from the Bengies picture screen on a horizontal plane and does not distort or diminish the image projected onto the picture screen. At best, the evidence established that a movie patron's attention **could** be drawn to the Royal Farms' operation by the color or the brightness of the Royal Farms' lighting as he or she watched a movie. . . . Bruce Dunlop, a lighting designer who testified **not** that the Royal Farms' lighting interfered with the projection of movie images at the Bengies at night, but rather, that because of the color and/ or intensity of the Royal Farms' lights in the distance, theater patrons **could** be distracted. . . . The evidence also established that . . . patrons could be distracted by the "By the Docks" lighting or the other

11

visible lighting along Eastern Boulevard.

In its analysis, the court surveyed cases from Maryland and from other jurisdictions determining that drive-ins could not maintain a nuisance action due to the light-sensitive nature of their industry. The court noted that Mr. Vogel admitted that his drive-in was especially sensitive and found that the location of the drive-in "in the midst of other commercial and retail establishments which must be adequately lit to do business at night makes the case for a finding of nuisance due to light spillage all the more impossible." Considering both Maryland and other jurisdictions' case law, the court concluded:

> It is beyond any reasonable dispute that the drive-in operation involved in this action is one that is peculiarly sensitive to light, and that this drive-in's owner, Mr. Vogel, is a particularly sensitive drive-in owner. In any event, this Court finds that the evidentiary record in this action does not support a conclusion that light emanating from the Royal Farms' location would constitute a nuisance to a business "no more than ordinarily susceptible to light" such as another convenience store, a restaurant or any other commercial or industrial use. If the business located on the Bengies property was a 7 Eleven or a Walmart or a car dealership, there would not be even a colorable claim for nuisance based on light spillage. Therefore, the verdict reflecting a finding of nuisance cannot stand.

(footnote omitted). The court continued:

> Even assuming, however, that Maryland law or a common law principle recognized elsewhere allowed this verdict to stand, the facts presented simply do not allow for a rational jury conclusion that Royal Farms' lighting constitutes a nuisance to the drive-in. The Royal Farms' lighting is not aimed or directed or oriented towards the drive-in. . . . There is simply no reasoned or rational basis to conclude that these very typical and ordinary commercial lights, employed lawfully by a business on the far side of the road from the drive-in could conceivably have constituted the type of substantial and unreasonable interference with the operation of the drive-in required by Maryland Law before a fact-finder can conclude that there is nuisance.

12

Accordingly, the circuit court set aside the judgment in favor of Bengies and entered judgment in favor of Royal Farms.[11]  This appeal followed.

## DISCUSSION

It is the responsibility of the court to aid a jury in the correct discharge of its duty and to correct error.[12]  The Maryland Rules equip circuit courts with several means to minimize or correct trial errors.  *Gen. Motors Corp. v. Seay,* 388 Md. 341, 352-53 (2005) (discussing the legislative history of Maryland Rule 2-532).  Maryland Rule 2-532, which governs motions for JNOV, is intended "to reduce costs to litigants and promote time efficiency by reducing both retrials and duplicate trials due to errors."  *Id*. at 352.  A motion for JNOV under Rule 2-532 "tests the legal sufficiency of the evidence."  *Impala Platinum, Ltd. v. Impala Sales (USA), Inc.*, 283 Md. 296, 326 (1978).  It gives the circuit

---

[11]
 With regard to the jury's monetary award, the court also noted its opinion that the award was not excessive:

> In the event that an appellate court determines that the Plaintiff did somehow make out a cognizable case of private nuisance, the undersigned will observe that, while the jury's monetary verdict was generous in the extreme (and could be characterized as out-of-proportion to any remote "harm" which has been suffered or to any reasonable remedy for that harm), that the verdict was not excessive under Maryland law, particularly in light of the fact that the Defendant inexplicably chose not to present the jury with evidence of alternate remedies of a more moderate cost.

[12]
 "Where it is manifest to the court that, on the plaintiff's own showing and the uncontradicted evidence in the case, there is no rational ground on which a verdict for the plaintiff can be based, the court has the duty, on a proper motion by the defendant, to direct a verdict for him."  *Barnes v. Housing Auth. of Balt. City*, 231 Md. 147, 152 (1963).

court a last chance to order the judgment that the law requires. *See, e.g., Goss v. Estate of Jennings*, 207 Md. App. 151, 174 (2012) (affirming a circuit court's grant of JNOV because it was "apparent that the evidence was legally insufficient to establish" negligence); *Gallagher v. H.V. Pierhomes, LLC*, 182 Md. App. 94 (2008) (affirming a circuit court's grant of JNOV because the evidence presented at trial was "legally insufficient to support the imposition of strict liability in tort for the conduct in issue, or to establish a private or public nuisance").

On review of a circuit court's decision to grant or deny a motion for JNOV, we are concerned with the dichotomy between the role of the judge, to apply the law, and the role of the jury, to decide the facts. As we explained in *Pickett v. Haislip,* 73 Md. App. 89, 98 (1987), "[o]nly where reasonable minds cannot differ in the conclusions to be drawn from the evidence, after it has been viewed in the light most favorable to the plaintiff, does the issue in question become one of law for the court and not of fact for the jury." Although we review the circuit court's legal findings *de novo*, *MBC Realty, LLC v. Mayor & City Council of Balt.*, 192 Md. App. 218, 233 (2010), we must determine "whether on the evidence presented a reasonable fact-finder could find the elements of the cause of action by a preponderance of the evidence." *Univ. of Md. Med. Sys. Corp. v. Gholston,* 203 Md. App. 321, 329, *cert. denied,* 427 Md. 65 (2012).

Bengies argues that the circuit court erred in granting Royal Farms' Motion for JNOV because Bengies presented sufficient evidence at trial upon which the jury could conclude that the Royal Farms lights caused an unreasonable and substantial interference

with the use and enjoyment of its property. As Bengies correctly argues on appeal, if the record presents any evidence, however slight, from which the jury could have reached its verdict, then Royal Farms is not entitled to a JNOV. *Nationwide Mut. Fire Ins. Co. v. Tufts*, 118 Md. App. 180, 190–91 (1997) (citing *Houston v. Safeway Stores, Inc.*, 109 Md. App. 177, 183 (1996)). Applying this standard, we find that the circuit court correctly set aside the jury's verdict where the evidence did not support a private nuisance action.

The concept of nuisance is deeply-rooted in common law and in Maryland case law. *Wash. Suburban Sanitary Comm'n v. CAE-Link Corp.*, 330 Md. 115, 124 (1993). Although the doctrine originally aimed to safeguard private landowners from being dispossessed of their property, it evolved to protect private landowners from "substantial interferences" with the possession of land. *Wietzke v. Chesapeake Conference Ass'n*, 421 Md. 355, 373-74 (2011) (citing DAVID A. THOMAS, THOMPSON ON REAL PROPERTY § 67.01–.02, at 111, 113 (2d ed. 2010 Supp.)).[13] Maryland courts have adopted Section 821D of the Restatement (Second) of Torts (1965), which more narrowly defines a private nuisance as "a nontrespassory invasion of another's interest in the private use or enjoyment of land." *See*, *e.g.*, *Rosenblatt v. Exxon Co., U.S.A.*, 335 Md. 58, 80 (1994); *Exxon Corp. v. Yarema*, 69 Md. App. 124, 147 (1986).

Nuisance is not confined to physical intrusions onto another's property; rather, it broadly encompasses all tangible invasions, including noise, odor, and light. *Yarema*, 69

---

[13] The nuisance doctrine also evolved to protect the rights of the public as well where a "right common to the general interest" has been interfered with. *Wietzke*, 421 Md. at 374.

Md. App. at 147. And, although there is no requirement that a plaintiff demonstrate physical injury from an alleged nuisance, a plaintiff must demonstrate that the defendant's interference with the plaintiff's property rights is both unreasonable and substantial in order to recover for nuisance. *Exxon Mobil Corp. v. Albright* (*Albright I*), 433 Md. 303, 409-11, *modified on other grounds*, *Exxon Mobil Corp. v. Albright (Albright II)*, 433 Md. 502 (2013); *accord Exxon Mobil Corp. v. Ford*, 433 Md. 426, 485-86 (2013) (following *Albright I*'s rationale and concluding that appellees with potable wells that had not tested positive for contamination failed to show substantial interference sufficient to sustain actions in nuisance).

The case before us involves an action for a private nuisance "in fact" as opposed to a nuisance *per se*. "A nuisance *per se* is an act, occupation, or structure which is a nuisance at all times and under any circumstances regardless of location or surroundings[,]" whereas "[a] nuisance in fact is an act, occupation, or structure, not a nuisance *per se*, but one which becomes a nuisance by reason of the circumstances, location, or surroundings." *Adams v. Comm'rs of Trappe*, 204 Md. 165, 170 (1954). More than a century ago, the Court of Appeals explained that not all interference to neighboring landowners will justify limiting the reasonable use of property:

> In determining the question of nuisance in such cases, the locality and all the surrounding circumstances should be taken into consideration; and [], where expensive works have been erected and carried on, which are useful and needful to the public, *persons must not stand on extreme rights,* and bring actions in respect of every trifling annoyance, otherwise, business could not be carried on in such places. But still, if the result of the trade or business thus carried on is such as to *interfere with the physical comfort, by*

16

*another, of his property, or such as to occasion substantial injury to the property itself*, there is a wrong to the neighboring owner for which an action will lie.

*Susquehanna Fertilizer Co. v. Malone*, 73 Md. 268, 280 (1890) (emphasis added).  Thus, a finding of nuisance involves "a balance of the competing property interests at stake." *Wietzke,* 421 Md. at 382-83.  The nuisance must, in the judgment of reasonable individuals, create a condition that is "naturally productive of actual physical discomfort to persons of ordinary sensibilities, tastes, and habits" and, in light of the circumstances, is "unreasonable and in derogation of the rights of the party."  *Meadowbrook Swimming Club v. Albert*, 173 Md. 641, 645 (1938) (citing *Hamilton Corp. v. Julian*, 130 Md. 597 (1917); *Woodyear v. Schaefer*, 57 Md. 1, 12 (1881)).

In the case *sub judice*, the parties do not dispute that light may amount to nuisance when it substantially interferes with another's reasonable use and enjoyment of his or her property.  Instead, the parties dispute whether Bengies, as an establishment that requires darkness to operate, may demand that Royal Farms modify the lighting on its property so that it cannot be seen at night from Bengies' property.  Royal Farms argues that under Maryland private nuisance law, Bengies' need for darkness was extreme, and the evidence produced at trial was insufficient because it failed to demonstrate objective harm.

A finding of private nuisance requires a two-part analysis:  (1) viewing the defendant's activity, was the interference unreasonable and substantial? and (2) viewing the plaintiff's alleged harm, was the inconvenience or harm caused by the interference

17

objectively reasonable?  First, the court found that Bengies failed to present sufficient evidence to demonstrate that Royal Farms' use of its lights at nighttime was unreasonable and substantial:

> The Royal Farms' lighting is not aimed or directed or oriented towards the drive-in. . . . There is simply no reasoned or rational basis to conclude that these very typical and ordinary commercial lights, employed lawfully by a business on the far side of the road from the drive-in could conceivably have constituted the type of substantial and unreasonable interference with the operation of the drive-in required by Maryland Law before a fact-finder can conclude that there is nuisance.

No testimony was presented to demonstrate that the Royal Farms lights were *unreasonable* based on its location, given that Eastern Boulevard is a heavily-traveled road flanking many commercial businesses, such as Wal-Mart and McDonald's.

Second, Bengies failed to demonstrate that the alleged harm or inconvenience was objectively reasonable.  The Court of Appeals explained the second part of the private nuisance analysis in *Albright I*, a case involving an underground gasoline spill.  In addressing the "non-detect appellees,"[14] the Court instructed:

> Appellees' adjustments in the use of their properties appear to derive not from Exxon's actual interference with their property, but rather from their fear of contamination and its possible impacts.  In order to recover for nuisance, however, a plaintiff must establish that any adjustments he, she or it makes in the use of his, her, or its property as a result of the defendant's tortious conduct are objectively reasonable. . . .[T]hese Appellees' fear of future contamination and resultant effects thus far is not **objectively reasonable** . . . in the absence of physical injury to real property resulting

---

14

  Certain appellees living on properties with potable wells that never tested positive for contamination were referred to in the *Albright I* and *Ford* cases as the 'non-detect' appellees.

18

from Exxon's actions, Appellees must demonstrate more than modest adjustments in their use of their real property resulting from the leak in order to establish nuisance.[15]

*Id.* (Emphasis added). Thus, in determining whether the Appellees in *Albright I* were inconvenienced or harmed by the underground gasoline spill, the Court applied an objective rather than a subjective test. This principle—that the alleged inconvenience be "objectively reasonable"—was recently illustrated by our decision in *Schuman v. Greenbelt Homes, Inc.,* 212 Md. App. 451, 456 (2013), a case involving a hyper-sensitive plaintiff. David Schuman lived in a townhome adjacent to Darco and Svetlana Popovic. *Id.* at 456. The Popovics smoked cigarettes, and Mr. Schuman claimed that their cigarette smoke infiltrated the common wall shared by their townhomes. *Id.* Unable to resolve the issue out of court, Mr. Schuman filed a complaint against the Popovics in the Circuit Court for Prince George's County for breach of contract, nuisance, trespass, negligence, and permanent injunctions.[16] *Id.* After a trial on the merits, the circuit court granted Mr. Schuman's request for a permanent injunction against Mr. Popovic's indoor smoking

---

15

    The "non-detect" appellees' complaints included using bottled water or Brita filters, entertaining in and about their homes less than expected, reducing the frequency of use of outdoor spaces, and taking shorter showers and baths. *Albright I*, 433 Md. at 410-11. The Court found that "[s]uch Appellees were not deprived, however, of the use of significant portions of their property, nor was the availability of their properties for their customary uses impaired substantially." *Id.* at 411.

16

    Mr. Schuman also filed a lawsuit against Greenbelt Homes, Inc., the cooperative housing association, for negligence and breach of the implied covenant of quiet enjoyment. *Schuman*, 212 Md. App. at 516. We confine our discussion of the case to Mr. Schuman's lawsuit against the Popovics.

19

pursuant to Mr. Popovic's consent; however, the court found in the Popovics' favor on all remaining counts. *Id.* at 459. Mr. Schuman appealed, arguing, *inter alia*, that the circuit court erred in ruling in the Popovics' favor on the nuisance claim. *Id.* at 517–18. This Court explained that in order to identify a nuisance in fact, we must consider what "'ordinary people, acting reasonably, have a right to demand in the way of health and comfort under all the circumstances'" and that "it is not enough if a particular plaintiff is 'offended or annoyed if he is particularly sensitive.'" *Id.* at 523 (quoting HARPER, JAMES & GRAY ON TORTS § 1.25 (3d ed. 2006)). We explained:

> While this Court understands that Schuman may have a particular sensitivity to the smell of smoke, *nuisance is not subjective*. The circuit court did not have to ignore, and was free to determine, that Schuman did not prove a substantial interference for a reasonable person by a preponderance of the evidence. It was reasonable to find that Mr. Popovic's smoke would not cause physical discomfort and annoyance of persons of ordinary sensibilities, nor would it seriously interfere with the comfort and enjoyment of the average person's home.

*Id.* at 525 (emphasis added). Because the plaintiff was unable to show that the inconvenience caused by the defendants' smoking was "objectively reasonable," in that an ordinary person would be offended or harmed by the smoke, we affirmed the court's ruling on the nuisance claim.

In the matter before us, the circuit court correctly noted that other state jurisdictions, in accord with Maryland's objective nuisance standard, have applied the standard in cases addressing whether a drive-in movie theatre can maintain a private nuisance claim based on an adjacent property owner's lights. For example, in

20

*Amphitheaters, Inc. v. Portland Meadows*, 198 P.2d 847 (Or. 1948), an outdoor drive-in theatre filed a lawsuit against the race track adjacent to its property, alleging claims of trespass and nuisance based on the race track's evening lighting. The race track's flood lights were generally aimed at the track, but the evidence indicated that the light spilled onto the drive-in theatre's premises. *Id.* at 850. In the absence of any binding precedent, the Supreme Court of Oregon reviewed the fundamentals of nuisance jurisprudence:

> No action will lie for a nuisance in respect of damage which, even though substantial, is due solely to the fact that the plaintiff *is abnormally sensitive* to deleterious influences, or uses his land for some purpose which requires *exceptional freedom from any such influences* . . . . 'So if I carry on a manufacture or other business which is so sensitive to adverse influences that it suffers damage from smoke, fumes, vibrations, or heat, which would in no way interfere with the ordinary occupation of land, the law of nuisance will not confer upon me any such special and extraordinary protection.

*Id.* at 853 (emphasis added) (quoting SALMOND ON THE LAW OF TORTS 238, 239 (9th ed. 1936)). The court ultimately held, as a matter of law, "that the loss sustained by the plaintiff by the spilled light which has been reflected onto the highly sensitized moving picture screen from the defendant's property 832 feet distant" is a loss without injury. *Id.* at 858.

Similarly, in *Belmar Drive-In Theatre Co., v. Illinois State Toll Highway*, 216 N.E.2d 788 (Ill. 1966), Belmar Drive-In Theatre Company filed an action against the Illinois State Toll Highway Commission, as well as the operators of business concessions at a toll-road service center, seeking damages caused by the bright lights emanating from the toll center adjacent to the theatre. *Id.* at 790. The Supreme Court of Illinois reviewed

persuasive authority for guidance:

> [As] stated in Joyce, Law of Nuisances, sec. 26, in this manner: "*** But the doing of something not in itself noxious does not become a nuisance merely because it does harm to some particular trade of a delicate nature in the adjoining property where it does not affect any ordinary trade carried on there nor interfere with the ordinary enjoyment of life. *A man who carries on an exceptionally delicate trade cannot complain because it is injured by his neighbor doing something lawful on his property, if it is something which would not injure an ordinary trade or anything but an exceptionally delicate trade*."

*Id.* at 791 (emphasis added) (internal citations omitted). And, specifically in regard to

cases alleging light as a nuisance:

> Again, it is stated in 5 A.L.R.2d 705: "The private nuisance light cases, considered as a whole, seem to warrant the generalization that if the intensity of light shining from adjoining land is strong enough to seriously disturb a person of ordinary sensibilities, or interfere with an occupation which is no more ordinarily susceptible to light, it is a nuisance; if not, there is no cause of action. *The courts will not afford protection to hypersensitive individuals or industries*."

*Id.* (emphasis added) (internal citations omitted). Relying on these authorities, the court

affirmed the trial court's dismissal of the nuisance count. *Id.; see also Sheridan Drive-In

Theatre, Inc. v. Wyo.*, 384 P.2d 597, 600–01 (Wyo. 1963) (affirming the trial court's

directed verdict in favor of the defendant on Sheridan Drive-In Theatre's private nuisance

claim based on the lack of damages and evidence of an actionable nuisance, based on the

extraordinary and unusual nature of the drive-in's property use); *Lynn Open Air Theatre,

Inc. v. Sea Crest Cadillac-Pontiac, Inc.*, 294 N.E.2d 473 (Mass. 1973) (noting that the

defendant's lights would not injuriously impact ordinary property owners in a developed,

commercial vicinity and that "injury to a particular user of specially sensitive

22

characteristics does not render the lights an actionable nuisance" (citations omitted)).

In the present case, the circuit court properly concluded that a reasonable fact-finder could not have found a private nuisance under Maryland law by a preponderance of the evidence presented at trial. Specifically, the court observed that, overall, there was "little objective evidence presented as to the intrusive or non-intrusive effect of the Royal Farms' lighting on the drive-in." Mr. Vogel, the proprietor of Bengies, testified that the lights from the Royal Farms, located across Eastern Boulevard (a heavily-travelled road in a commercial district), interfered with his current business and prevented him from constructing a second drive-in screen on his property. He also admitted, however, that he never took the necessary steps to begin construction of a second screen, and that the potential location for the second screen, as represented in the Covenant Agreement, would have been even farther away from the Royal Farms store.[17]

Mr. Vogel admitted several times that a drive-in is a unique business in its need for darkness to operate. He also conceded that if he owned a tire store or a doctor's office, the lights probably would not bother him and that he could not "think of any other occupation that would require that unique night sky." As noted *supra,* Mr. Vogel framed the problem in this case as "[t]he light interfer[ing] with the business that thrives on darkness."

---

[17] The Court noted that the jury "very obviously did not conclude that the Bengies was prevented from constructing a second screen, or otherwise that the Bengies suffered any loss or revenue or business opportunity as a result of the Royal Farms' lighting" as the jury awarded damages exactly equivalent to the cost of building and insuring a wall on the drive-in property to block the view of the Royal Farms.

Mr. Vogel, who conceded that he is personally sensitive to light, testified that the lights caused harm to the drive-in. No other evidence was presented that an ordinary person, or even patrons or employees of the drive-in, were ever harmed or inconvenienced by the lights at the Royal Farms. Instead, the testimony was that Bengies had no complaints from customers about the lights, even though Bengies had a method in place for receiving complaints and had received complaints about other matters. And, although Bengies presented expert testimony to support its claim that the lights interfered with the drive-in, *Albright II*, 433 Md. at 504-05, the testimony did not link the *possibility* of interference with testimony that any objectively reasonable actual harm or inconvenience occurred. Dr. Brett Levinson, qualified as an expert in ophthalmology, testified that Royal Farms' blue and green lights *could* affect a viewer's vision at nighttime, and Bruce Dunlop, qualified as an expert in lighting design, opined that the Royal Farms lights *could* create a distraction to moviegoers, but they also had to admit that lighting from other sources on the same Eastern Avenue horizon *could* distract moviegoers.

Bengies established that it is uniquely sensitive to light, but a private nuisance action cannot be maintained based solely on the special sensitivities of a plaintiff. *Schuman*, 212 Md. App. at 470. As the circuit court explained in its Memorandum Opinion, "the evidentiary record in this action does not support a conclusion that light emanating from the Royal Farms' location would constitute a nuisance to a business 'no more than ordinarily susceptible to light' such as another convenience store, a restaurant

24

or any other commercial or industrial use." Because Maryland requires that a plaintiff demonstrate that the defendant's interference with the plaintiff's property rights is both unreasonable and substantial in order to recover for nuisance, *Albright I*, 433 Md. at 409-11, and that the inconvenience created by the interference be one that is "objectively reasonable" to the ordinary person, *id.,* we find the evidence presented at trial was not legally sufficient to support a jury verdict in favor of Bengies against Royal Farms for a private nuisance.

We clarify that we do not hold that a drive-in cannot ever maintain an action for a private nuisance. Certainly a scenario could exist in which the lights emanating from an adjacent property could support a private nuisance action, but those lights must be so intrusive as to interfere with an ordinary business's reasonable, ordinary use of its property. The evidence in this case simply did not present such a scenario. *Cf. Gallagher, supra,* 182 Md. App. at 113-14 (affirming a circuit court's grant of JNOV based on insufficient evidence to prove private nuisance). We do not believe the evidence at trial shows that the Royal Farms lights will substantially impact Bengies' continuing vitality as Maryland's last remaining outdoor drive-in theatre.

**JUDGMENT AFFIRMED;**
**COSTS TO BE PAID BY APPELLANT.**

25